Donald Lloyd CLARK *v.* STATE of Arkansas

CR 96-839                                944 S.W.2d 533

Supreme Court of Arkansas
Opinion delivered May 12, 1997

*Baxter, Wallace & Jensen,* by: *Ray Baxter,* for appellant,

*Winston Bryant,* Att'y Gen., by: *J. Brent Standridge,* Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. On May 2, 1995, the appellant, Donald Lloyd Clark, was arrested for some burglaries and thefts committed in Dallas County. At the time of his arrest, Clark expressed relief to law enforcement officers at being caught because he was suffering from an addiction to crystal methamphetamine. He claimed his addiction cost him $300 a day, and he committed crimes to underwrite those costs. After his arrest, law enforcement authorities from three or four other counties met in Dallas County to determine whether Clark had any information concerning burglaries committed in their surrounding counties.[1] At this time, Dallas County Sheriff Donnie Ford told Clark that, if he would cooperate, Ford would recommend that Clark serve only ten years' imprisonment to be served concurrently for all the crimes he had committed. Clark subsequently cooperated with the various authorities, and in some instances, accompanied them to drug dealers' houses where the officers located stolen guns and other stolen property.

On appeal, Clark argues that he had been given the impression that the prosecuting attorneys of all the counties, where crimes were committed, would follow the recommendations of law enforcement officials and that he was "almost" told he would

---

[1] Clark apparently had been involved in committing burglaries and thefts in a total of six Arkansas counties, including Dallas and Clark Counties.

not need to hire a lawyer because "it was just going to fall into place." Clark claims that, in reliance upon the "promise of leniency," he cooperated extensively with authorities in six counties, including Clark County. However, the Clark County prosecutor refused to agree to Dallas County Sheriff Ford's ten-year concurrent recommendation, but instead the prosecutor sought to impose the maximum sentence for each of four felony offenses committed in Clark County. Consequently, Clark defended against the Clark County charges, and filed a motion to suppress his confession in that proceeding. The Clark County Circuit Court denied Clark's motion, and the matter went to trial. Clark was tried on two charges of burglary and two charges of theft of property, and he was convicted and given the maximum sentence for each charge to run consecutively — a total of forty years.

Clark appeals his convictions, and argues the trial court erred (1) in refusing to exclude his confessions and denying his request to enforce the promise of leniency offered him by law enforcement authorities, (2) in rejecting his request to voir dire the jury regarding the subject of drug use, (3) in denying his attorney the opportunity to elicit evidence or to give argument during the sentencing phase of the trial regarding prison life and the workings of parole and meritorious good time, and (4) in permitting the State to introduce a conviction Clark sustained twenty-one years ago.

In considering Clark's initial suppression argument, we do so in light of the rule all custodial confessions are presumed to be involuntary and the burden is upon the State to show the statement was voluntarily made. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995). Additionally, we are also guided by the rule that a statement induced by a false promise of reward or leniency is not a voluntary statement. *Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1988). From our careful review of the record in light of these principles, we conclude there is no evidence that Clark's confession was obtained in exchange for a false promise. *See Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996); *see also Elwood v. State*, 297 Ark. 101, 759 S.W.2d 553 (1988).

Initially, we point out that nowhere does it appear in the record that any Clark County law enforcement officer, and in par-

ticular Sheriff Troy Tucker, promised Clark that, if he would cooperate, Clark would get a ten-year sentence for the crimes committed in Clark County.[2] Sheriff Tucker clearly denied having made promises of any kind. Indeed, Clark admitted he had already told Dallas County Sheriff Ford about the Clark County burglaries, and therefore, there was little or nothing for Sheriff Tucker to gain by offering Clark any promise.

█ Clark largely relied on Sheriff Ford's advice at the time of Clark's arrest that, if Clark would cooperate, Ford would recommend ten years. Sheriff Ford made such recommendations to all the prosecutors, including the prosecutor for Clark County. However, Ford testified that he had advised Clark that Ford could only make a recommendation to the prosecutor, but he could not force the prosecutor to take the recommendation. In further support of Ford's version of what was said, the record reveals that when Clark gave a written statement the day after his arrest, he signed a waiver of rights form which specifically provided no promises were offered to induce him to make a statement. In sum, we must conclude that, from our careful review of the evidence, the state breached no promise.

█ Before leaving this point, we add that, even if it could be said that disputed testimony existed on the promise-of-leniency issue, officers clearly testified that they offered no reward to Clark at any time. The trial judge was entitled to believe this evidence. *Everett v. State*, 316 Ark. 213, 871 S.W.2d 568 (1994). This is especially true considering the facts in this case. For example, Clark, upon his arrest, was fully advised of his rights, was not detained or questioned for any prolonged length of time before giving his statement, and was not subjected to mental or physical punishment. Clark is forty-two years old and has attended college for four years. Plus, he is no stranger to the criminal justice system, having been previously convicted of two felonies. Again, in view of this evidence, we cannot say the trial court erred in denying Clark's suppression motion.

---

[2] We note Clark did testify that, while at Clark's house, "several sheriffs" were under a tree beside the house and they agreed the ten years would be his fate if he cooperated.

In Clark's second point, he asserts that, because he suffered from drug addition, he should have been permitted to voir dire the jurors concerning their experiences with friends or family members who used drugs. Clark cites no case directly in point, but refers to *Jeffries v. State*, 255 Ark. 501, 501 S.W.2d 600 (1973), where, during voir dire, the trial court dismissed a juror who volunteered that he was more prejudiced than others in drug cases and believed that, if a person was in possession of an illegal drug, that was evidence of guilt. On appeal, Jeffries further argued that, while the juror was properly excused, the trial court erred in failing to grant a mistrial. This court rejected Jeffries' argument. Even so, Clark urges that the *Jeffries* decision indicates the trial court acted appropriately in dismissing the juror for cause and reflects adequate reason for the trial court in the present case to at least allow Clark to have questioned prospective jurors concerning their views on or experience with drugs.

■ Of course, Clark was not charged with drug offenses as was the case with the defendant in *Jeffries*. Nor did officers find any drugs on Clark at the time of his arrest. Aside from Clark's efforts to inject the issue of drugs at trial through argument and cross examination, drugs had nothing to do with the State's proof regarding the burglary and theft charges. Neither did Clark raise drugs as an affirmative defense which might have made his questioning of jurors relevant. *Cf. Davis v. State*, 293 Ark. 472, 739 S.W.2d 150 (1987). Arkansas law is well settled that the course and conduct of voir dire examination of the veniremen is primarily within the trial judge's discretion and this court will not reverse absent an abuse of that discretion. *Hall v. State*, 315 Ark. 385, 868 S.W.2d 453 (1994). Based upon the record before us, we believe the trial court did not abuse its discretion in denying Clark's proposed questioning on voir dire as being irrelevant.

In his third argument, Clark submits the trial court abused its discretion in precluding him, during the sentencing phase, from testifying to what it is like in the penitentiary and arguing how prison life works and how difficult it is to be a class-one prisoner — a classification needed to obtain sentence reduction and an early release. In considering this point, we are guided by Ark. Code Ann. § 16-97-103(1) (Supp. 1995), which in pertinent part

provides that evidence relevant to sentencing by either the court or a jury may include the law applicable to parole, meritorious good time, or transfer.

During the sentencing phase, Clark testified that 80% of the people in the penitentiary were there because of drugs. When asked to tell the jury about what it is like to be in the penitentiary, the State objected, stating such inquiry was outside the realm of sentencing. The trial court agreed. And later, after the trial judge instructed the jury concerning parole and meritorious good time, defense counsel argued to the jury that the prosecutor "would have us believe that it's an automatic one-sixth of the time," but "That's not what the instruction says and that sure isn't how prison life works." Counsel further argued that a prisoner only gets good time provided he or she is a class-one prisoner — a classification that is not easy to achieve. The State objected to Clark's testimony and defense counsel's argument, touching on prison life and the difficulties in obtaining a sentence reduction. The trial court sustained the State's objections, noting the legislature authorized the only option to be given a jury.

In keeping with that law, § 16-97-103(1), and the law applicable to parole, meritorious good time or transfer, the trial judge read the following instruction to the jury:

> In your deliberations on the sentence to be imposed, you may consider the possibility of the transfer of Donald Clark from the Department of Correction to the Department of Community Punishment. After he serves one-third of any term of imprisonment to which you may sentence him, he will be eligible for transfer from the Department of Correction to the Department of Community Punishment. If transfer is granted, he will be released from prison and placed under post-prison supervision. The term of imprisonment may be reduced further, to one-sixth of any period you impose, if he earns the maximum amount of meritorious good time during his imprisonment.
>
> Meritorious good time is time-credit awarded for good behavior or for certain achievements while an inmate is confined in a Department of Correction or Community Punishment facility, or in a jail while awaiting transfer to one of those facilities. It is awarded an inmate on a monthly basis so that he receives one

day for every day served, not to exceed thirty days per month. Accrual of meritorious good time does not reduce the length of a sentence but does decrease the time the defendant is required to be imprisoned before he becomes eligible for transfer to community supervision, under which the remainder of his sentence will be served.

*See* AMCI 2d 9402 and 9403; *see also* Ark. Bd. Corr. & Comm. Punishm't Reg. 826-7.9-VI(A)(1) and (2).

We first note that, while the trial court properly instructed the jury on the law applicable to parole, meritorious good time, and transfer as required by § 16-97-103(1), Clark never proffered any additional law on the subject. Instead, he merely offered his own view on what prison life was like — a subject that appears totally irrelevant concerning what sentence should be imposed. And if Clark intended to offer evidence that the law pertaining to parole or meritorious good time was not, for some reason, being followed by prison authorities, no such suggestion was evident by counsel's question to Clark concerning what it is like to be in the penitentiary. In short, the trial court was left to speculate as to what relevance Clark's description of prison life might have on his sentencing by a jury.

The same lack of relevance ensues from defense counsel's argument to the jury concerning how difficult it is to be a class-one prisoner, which is required to achieve sentence reduction. Again, such a suggestion has nothing to do with the sentencing law as it applies to parole, meritorious good time, or transfer, but instead seems merely to suggest that prisoners who misbehave cannot avail themselves of these sentence-reduction regulations. In sum, we cannot say the trial judge erred in excluding the testimony and argument offered by Clark, since the relevancy of such matters was never shown.

In his final argument, Clark contends that, during the penalty phase, the trial court erred in admitting into evidence a twenty-one-year-old prior conviction. He claims the conviction was irrelevant and inadmissible since it was more than ten years old. *See* A.R.E. Rule 609(b). The record, however, reflects Clark had no objection to Clark's twenty-one-year-old judgment when

it was admitted into evidence, most likely, because § 16-97-103(2) authorizes both felony and misdemeanor prior convictions during the sentencing phase.[3] Thus, Clark's failure to timely object is a waiver of this issue on appeal. *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996).

ARNOLD, C.J., not participating.

---

[3] Section 16-97-103(3)(iii) excludes consideration of delinquency adjudications occurring more than ten years prior to the commission of the offense charged.