Marcel Wayne WILLIAMS *v.* STATE of Arkansas

CR 97-949 991 S.W.2d 565

Supreme Court of Arkansas
Opinion delivered June 10, 1999

*Herbert T. Wright, Jr., P.A.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

LAVENSKI R. SMITH, Justice. Appellant Marcel Williams appeals his convictions for capital murder, kidnapping, rape, and aggravated robbery from the Pulaski County Circuit Court. Following conviction, the jury imposed a sentence of death. Williams asserts numerous errors in both the guilt and penalty phases of the trial. We find no reversible error and affirm.

*Facts*

On November 20, 1994, Stacy Errickson, the victim, on her way to work, stopped at the Jacksonville Shellstop for gas. The time was approximately 6:45 a.m. Williams approached Errickson's vehicle, drew a firearm, and forced her to move from the driver's seat to the passenger's side. Williams then drove Errickson's car away from the convenience store. Williams then took Errickson to several automated teller machines and coerced her to attempt withdrawals. A total of eighteen transactions yielded the sum of $350. The last transaction occurred at 7:37 a.m. These transactions were recorded by security cameras at several banking facilities. Stacy Errickson did not make it to work that day, nor did she pick up her child from the babysitter at the end of the day.

Police arrested Williams on an outstanding warrant on November 29, 1994, and questioned him based on physical evidence linking him to two other assaults on women. During the course of an intensive interrogation lasting some thirteen hours, Williams admitted having abducted Errickson from the convenience store and robbing her through ATM withdrawals. However, he denied any sexual assault and assured the officers that to the best of his knowledge Errickson was alive. Appellant attempted to implicate others as accomplices asserting that they were the ones responsible for physically harming her. Based upon information Williams supplied, the police recovered a sheet matching Williams description as one he used in connection with the abduction and also recovered a gold ring which Williams identified. On December 5, 1994, police discovered Stacy Errickson's body buried in a shallow grave. Other evidence adduced at trial indicated that witnesses Tammy Victoria and Tammy Keenahan identified Williams as a man they had seen on the morning of November 20, 1994, at the Shellstop. They also testified that after they left the station he followed them in a car and attempted to stop them until they sought refuge at the air force base. Williams subsequently returned to the Shellstop and abducted Stacy Errikson.

On April 5, 1995, the Pulaski County prosecutor by felony information charged Williams with capital murder, kidnapping, rape, and aggravated robbery. The information also asserted that

Williams had four prior felony convictions. The Pulaski County Circuit Court tried Williams on these charges beginning on January 6, 1997. Appellant was convicted on all counts. During the sentencing phase of the trial the prosecutor introduced evidence in support of three aggravating circumstances, and the appellant offered one mitigating circumstance. The jury found that all three alleged aggravating circumstances existed beyond a reasonable doubt and that Williams's mitigating circumstance was also established. In balancing these findings the jury recommended a sentence of death, which the trial court accepted.

On appeal, Williams challenges the sufficiency of the evidence on all charges against him. Williams also contends the trial court committed reversible errors in refusing to strike the jury panel; in admitting his custodial statement; in admitting testimony of another victim in sentencing; in admitting other specific evidence; and in denying his pretrial death-penalty motions. We disagree and affirm.

### Sufficiency of the Evidence

We consider sufficiency of the evidence before addressing other alleged trial errors. *Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998). The test for determining sufficiency of the evidence is whether there is substantial evidence to support the verdict. On appeal, we will review the evidence in the light most favorable to the appellee and sustain the conviction if there is any substantial evidence to support the verdict. *Davis v. State*, 314 Ark. 257, 863 S.W.2d 259, 262 (1993), *cert. den.* 511 U.S. 1026 (1994). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* Only evidence supporting the verdict will be considered. *Stewart v. State*, 331 Ark. 359, 961 S.W.2d 750 (1998). It is important to note that we make no distinction between circumstantial and direct evidence when reviewing for sufficiency of the evidence. *Davis*, 314 Ark. at 264, 863 S.W.2d at 262. However, for circumstantial evidence to be sufficient, it must exclude every other reasonable hypothesis consistent with innocence. Whether the evidence excludes every hypothesis

is left to the jury to determine. *Id. Booker v. State*, 335 Ark. 316, 984 S.W.2d 16 (1998).

██ ██ Appellant first asserts insufficiency of the evidence to support the element of forcible compulsion in the aggravated-robbery charge. A person commits aggravated robbery if he commits the offense of robbery, and is armed with a deadly weapon. Ark. Code Ann. § 5-12-103(a)(1) (Repl. 1993). Our statutes focus on the threat of harm rather than the taking of property. *Robinson v. State*, 303 Ark. 351, 797 S.W.2d 425 (1990); *Jarrett v. State*, 265 Ark. 662, 580 S.W.2d 460 (1979). Williams, in his statement, told police he and his companions abducted the victim at gunpoint. Given the circumstances of her abduction, the jury could have reasonably believed that Williams also used the weapon to coerce the victim to accompany him to ATMs and hand her money over to him. We hold there was substantial evidence to support the jury's verdict on aggravated robbery.

██ ██ Appellant next asserts insufficiency of the evidence to support forcible compulsion on the rape charge. This assertion is meritless. Forcible compulsion means "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2) (Repl. 1997). We recently stated the relevant considerations in *Freeman v. State*, 331 Ark. 130, 132, 959 S.W.2d 400 (1998), where we said, "'physical force' [is defined] as 'any bodily impact, restraint or confinement, or the threat thereof.'" *Strawhacker v. State*, 304 Ark. 726, 731, 804 S.W.2d 720, 723 (1991). The test that we have used to determine whether there was force is "whether the act was against the will of the party upon whom the act was committed." *Mosley v. State*, 323 Ark. 244, 249, 914 S.W.2d 731, 734 (1996). In the instant case, Williams abducted the victim at gunpoint, robbed her, and took her to a storage facility where the evidence shows she was sexually assaulted. There is no evidence of any consensual conduct in the events of November 20, 1994. Police discovered the victim's lunch cooler at the storage facility as well as an article of clothing that proved to contain evidence of Williams's assault upon the victim. Substantial evidence supports the verdict on the rape.

■ ■ Similarly, appellant Williams then asserts there was insufficient evidence to show the kidnapping element of restraint. The assertion, though, is similarly meritless. Ark. Code Ann. Section 5-11-101(2) [Definitions] provides: "(2) 'Restraint without consent' includes restraint by physical force, threat, or deception, or in the case of a person who is under the age of fourteen (14) years or incompetent, restraint without the consent of a parent, guardian, or other person responsible for general supervision of his welfare. . . ." The facts of this case indicate Williams restrained the victim by threat of force with a firearm. Also, the victim's hands were bound behind her back. The purpose of the restraint may be inferred from circumstantial evidence. *Fairchild v. State*, 305 Ark. 406, 808 S.W.2d 743 (1991). The circumstances surrounding Errickson's abduction clearly support the jury's verdict that she was restrained without consent.

■ Appellant Williams also asserts there was insufficient evidence to support the verdict for capital murder in that there was a failure to prove kidnapping. As discussed previously, we find substantial evidence supported the verdict for kidnapping. This assertion, therefore, is meritless.

■ Finally, with respect to sufficiency of evidence, Williams asserts there is insufficient evidence to support the imposition of the death penalty. We will uphold the jury's verdict if there existed substantial evidence for the jury to find beyond a reasonable doubt that one or more aggravating circumstances exist and that they outweighed any mitigating circumstances. Prior to trial, the State disclosed its intent to introduce evidence to establish the existence of four aggravating circumstances. They were:

> (1) The defendant previously committed another felony, an element of which was the use or threat of violence to another person.

> (2) The capital murder was committed for the purpose of avoiding or preventing an arrest.

> (3) The defendant committed the murder of Stacy Errickson for pecuniary gain.

> (4) The capital murder was committed in an especially cruel or depraved manner.

At trial, the State introduced evidence in support of (1), (3), and (4). In response, appellant introduced evidence which established the existence of one mitigating circumstance. Based on that evidence, the jury found that Williams accepted responsibility for his conduct and admitted participation in the crime. The State's evidence reflected Williams forcibly abducted Stacy Errikson, robbed her, raped her, and killed her. It further showed Errikson had a significant period of time to contemplate her fate. The physical evidence established a violent physical assault by appellant against the victim. Injuries to her head indicated deep bruising to her neck and to her face. The victim was bound with her hands behind her back. The medical testimony further indicated her death was by asphyxiation from strangulation. Appellant offered no evidence to contradict the proof establishing robbery and, indeed, admitted to robbing the victim. The State introduced into evidence convictions on both previous violent felonies — aggravated robbery and kidnapping. On review, the jury's judgment will be upheld if, taking the evidence in the light most favorable to the State, a rational trier of fact could find the aggravating circumstance to have existed beyond a reasonable doubt. *Kemp v. State*, 324 Ark. 178, 200, 919 S.W.2d 943, 953-954, *cert. denied*, 117 S.Ct. 436, 136 L.Ed.2d 334 (1996). *Willett v. State*, 335 Ark. 427, 434, 911 S.W.2d 937 (1998). The balancing of aggravating and mitigating circumstances is properly the duty of the jury. *Willett, id.* at 436. We conclude substantial evidence supported the jury's finding that aggravating circumstances existed beyond a reasonable doubt and that they outweighed the defendant's mitigating circumstance.

*Alleged error in refusing to strike the jury panel*

Williams alleges racial bias in the selection of the jury in violation of his constitutional rights as outlined in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, (1986). Williams alleges he established a *prima facie* case by showing (1) that he was a member of a cognizable racial group, *i.e.* African-American, (2) that the State exercised peremptory challenges to remove members of that group from the venire, and (3) that such challenges were exercised on account of their race. Williams contends that although the State

offered a racially neutral explanation, in reality the explanation was a mere pretext.

■■ ■■ We recently addressed the requirements of *Batson* and set out the specific procedures to be followed by our state's trial courts in *MacKintrush v. State*, 334 Ark. 390, 399, 978 S.W.2d 293, 297 (1998). In *MacKintrush*, we delineated a three-step analysis process that includes: (1) the peremptory-challenge opponent must make a *prima facie* case of racial discrimination, (2) the strike's proponent must offer a racially neutral explanation, and (3) the trial court must decide whether the opponent has proven purposeful racial discrimination. *Id.* at 397. These steps are taken from the U.S. Supreme Court's clarification of *Batson* contained in *Purkett v. Elem*, 514 U.S. 765 (1995). In *MacKintrush*, we stated "In light of the Purkett decision, we have reassessed the proper procedures for the trial courts to follow in *Batson* cases and take this opportunity to set forth those procedures. Manifestly, there is a three-step processs that must be used when the opponent of the strike makes a prima facie case. Furthermore, it is clear that the burden of persuasion establishing purposeful discrimination never leaves the opponent of the strike. And, finally, the *Batson* process must occur outside of the hearing of the venire."

During voir dire, the prosecution used six peremptory challenges striking four African-Americans, three female and one male. Williams made a *Batson* challenge upon the State's first peremptory challenge, which was for a Ms. Artis, an African-American female. In the court's view, element two of a prima facie case, "process or pattern to discriminate" was not established. However, the State responded with a racially neutral explanation. The State challenged the juror due to her relatively low education level, the complex DNA evidence at issue and that she did not seem "bright." The trial judge weighed and assessed what had been presented and did not seat the challenged juror but made no final ruling on the challenge itself. During the course of voir dire, there was discussion about why jurors were being excused, which included educational levels as well as predisposition toward the death penalty.

On the State's seventh challenge, the State attempted to excuse Ms. Collins, an African-American female. Williams made a *Batson* challenge noting Ms. Collins had a B.A. The court found that Williams had now stated a prima facie case. The State responded with a racially neutral explanation by arguing she was ambivalent on the death penalty and that although she indicated a willingness to impose death if it were appropriate, she also indicated a reluctance to do so. The court noted the State had reduced the panel of African-Americans by 66%. However, the court then also found, after assessing the circumstances, that the prosecution did not engage in a pattern of racial discrimination. The court then found that Ms. Collins should be seated and seated her. After completion of jury selection but before the start of the trial, the court replaced one of the original jurors with an alternate due to illness. The original juror was Caucasian and the alternate who replaced him was African-American. It is undisputed that the jury eventually seated for the trial included four African-Americans. From our review of the record, the trial court properly applied our holding in *MacKintrush*.

It is undisputed that the prosecution used peremptory challenges with African-American potential jurors. It is also undisputed that the jury eventually seated for the trial included four African-Americans. As Williams acknowledges, the prosecution stated race-neutral bases for the challenges, and that they were made to obtain a jury capable of understanding the complex evidence, particularly, DNA evidence. Additionally, the State justified its challenges, stating they were to ensure that all jurors would follow the law with respect to imposition of the death sentence. Williams argues, in turn, that lower-educated whites were retained when higher-educated blacks were not.

We will reverse a trial court's ruling on a *Batson* challenge only when its findings are clearly against the preponderance of the evidence. *Green v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997). In making *Batson* rulings, this court accords some measure of deference to the trial court in that it is in a superior position to make these determinations because it has the opportunity to observe the parties and determine their credibility. *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998); *Roseby v. State*,

329 Ark. 554, 953 S.W.2d 32 (1997). Moreover, unless discriminatory intent appears in the prosecution's explanation, the reason given will be considered race-neutral. *Hernandez v. New York*, 500 U.S. 352, 360 (1991). Consistent with our holdings, the record reflects the court struggled over this issue, weighing and assessing the facts and arguments presented, to decide whether the State's explanation was merely pretextual. *MacKintrush, id.* Upon review, we cannot say that the trial court's rulings were clearly against the preponderance of the evidence.

 Finally, as to the jury, Williams argues that the trial court erred in refusing to strike jurors for cause, which forced Williams to use all his peremptory challenges on jurors who should have been excused. Specifically, Williams contends that he could not strike juror Fortson. However, Williams admits juror Fortson could not have been struck for cause. We have said that in order to challenge a juror's presence on appeal, the appellant must have exhausted his peremptory challenges and must show that he was forced to accept a juror who should have been excused for cause. *Berry v. St. Paul Fire & Marine Ins. Co.*, 328 Ark. 553, 569, 944 S.W.2d 838, 846 (1997). Appellant must have asked the court to remove the juror for cause, and the court must have improperly denied the request. *Willis v. State*, 334 Ark. 412, 420, 977 S.W.2d 890 (1998). Williams did not show he was forced to accept a juror who should have been excused for cause. It is also worthy of note that Mr. Fortson did not sit on the jury, in any event, due to illness.

### Admission of the Appellant's Statement

 As to Mr. Williams's statement, this court reviews the voluntariness of confessions by making an independent determination based on the totality of the circumstances and reverses the trial court only if its decision was clearly erroneous. *State v. Sheppard*, 337 Ark. 1, 987 S.W.2d 677 (1999). Custodial statements are presumed involuntary, and the State must prove by a preponderance of the evidence that the statement was given voluntarily and was knowingly and intelligently made. *Rychtarik v. State*, 334 Ark. 492, 976 S.W.2d 374 (1998).

Williams first argues ignorance of the rights he waived in making the statement as well as ignorance of the ensuing consequences. Williams contends the police did not inform him of the actual charges which were the subject of the interview. He also states that he was arrested on a misdemeanor charge and told he was a suspect in a kidnapping. He alleges impropriety in the interrogation since he only believed he was a suspect in a kidnapping and not a murder.

 Williams was arrested and interviewed on November 29, 1994. Police read him the required *Miranda* rights, and Williams gave written consent for interrogation on a police form. The transcript of the interview and police testimony indicated he exhibited knowledge and understanding of the process he was undergoing. Appellant had sufficient education and intelligence to comprehend the explanation of rights having obtained a GED and at least one semester of college. Appellant knew one officer by name. The record reflects the police principally questioned appellant about the abduction hoping that Mrs. Errickson might still be found alive. The victim's body was not found until December 5, 1994. No evidence establishing the commission of a homicide had been found at that time. During the interview, Williams did not confess to murder but instead insisted throughout that she was alive when he last saw her. As of the interview, the police only knew Errickson was missing and that Williams was a suspect. We find Williams understood he was voluntarily giving up substantial rights and that he understood the potential consequences, and accordingly find the trial court was not clearly erroneous.

 Mr. Williams also asserts the statement was not voluntary because he was enticed by promises. He alleges the officers promised to go the prosecutor and tell him Mr. Williams had cooperated and knew he'd made a mistake. "A statement induced by a false promise of reward or leniency is not a voluntary statement." *Knight v. State*, 62 Ark. App. 230, 233, 971 S.W.2d 272 (1998), quoting *Clark v. State*, 328 Ark. 501, 944 S.W.2d 533 (1997). As with other aspects of voluntariness, we look at the totality of the circumstances. *Conner v. State*, 334 Ark. 457, 469-70, 982 S.W.2d 655 (1998). During the interview, Williams, not

the police, raised the prospect of police discussions with the prosecutors. Although the officer mentioned he would relate Williams's cooperation to the prosecutor, no assurance of any benefit to Williams was conveyed. We find no false promise of leniency.

■ ■ Conditions of the interview are also alleged to have been coercive. The questioning commenced at 4:22 p.m. and concluded the following morning at 6:00 a.m. At least two officers were present and Mr. Williams alleges he was reduced to tears twice. Length of detention is an issue in an analysis of voluntariness of a confession. *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997). The statement itself is helpful on this issue. Over the thirteen hours, at least two were spent in driving to try and find a house. Length alone, however, is not determinative. We found twelve hours of intermittent questioning to not be coercive in *Vaughn & Wilkins v. State*, 252 Ark. 505, 479 S.W.2d 873 (1972). A critical consideration in this interview was that the focus of the officers was on finding Stacy Errickson, who at the time of the interview was still missing and presumed alive. The police remained optimistic that they might find Errickson alive, and over the course of the interview it became increasingly clear Williams had knowledge of her whereabouts but refused to cooperate fully. At one point the police took Williams to a house in Little Rock where he stated he thought Errickson could be found. During the interrogation, Williams was provided food, drink, and cigarettes. He requested that an officer he knew be brought to the interview, and he was obliged. He showed familiarity with the criminal justice system and never once asked that the interview be stopped. While the interview was lengthy and intensive, we hold no impermissible coercion occurred.

■ Finally, Mr. Williams challenges admission of the statement on the basis that the prosecutor should not have used it at trial because the prosecutor knew the statement was false. This assertion is without merit. "It is settled beyond question that a party's attempt to fabricate evidence is admissible, not merely as an admission under Uniform Evidence Rule 801(d)(2) but as proof relevant to show his own belief that his case is weak. As one court has said in a case involving a fabricated alibi, "Fabrication of evidence of innocence is cogent evidence of guilt." *Harvey v.*

*United States*, 215 F.2d 330 (D.C. Cir., 1954). *Kellensworth v. State*, 276 Ark. 127, 633 S.W.2d 21 (1982).

### Denial of pretrial motions

■ Prior to trial, Williams made several motions attacking on principle the constitutionality of the death penalty and the use of victim-impact evidence. Williams first argues death-qualifying the jury was unconstitutional. This issue has already been settled by this court. We have time and again rejected the notion that death-qualified juries are unconstitutional. *Hickson v. State*, 312 Ark. 171, 847 S.W.2d 691 (1993); *Fretwell v. State*, 289 Ark. 91, 708 S.W.2d 630 (1986); *Rector v. State*, 280 Ark. 385, 659 S.W.2d 168 (1983), *cert. denied* 466 U.S. 988 (1984). The United States Supreme Court has also rejected this argument, holding that death-qualified juries are constitutional. *Lockhart v. McCree*, 476 U.S. 162 (1986). *Davis v. State*, 314 Ark. 257, 268, 863 S.W.2d 259 (1993), *cert. den.* 511 U.S. 1026 (1994).

■ Next, Williams seeks a finding that Ark. Code Ann. section 5-4-603 is unconstitutional because it requires death on certain findings. This argument is without merit. We have previously held and do so here again that it does not result in a mandatory death sentence. See *Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986), *cert. den.* 479 U.S. 1101 (1987); *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995); *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996).

■ It is also alleged the death sentence is imposed arbitrarily and capriciously in that the death penalty is more likely to be imposed on a black than a white person. Williams cites *Patterns of Deaths: An Analysis of Racial Disparities in Capital Sentencing and Homicide Victimization*, 37 STAN. L. REV. 27 (1984). This argument has already been rejected and the article has been considered. We addressed the matter in *Lee v. State*, 327 Ark. 692, 704, 942 S.W.2d 231 (1997), cert. den. 118 S.Ct. 572 (1997), where we stated:

> We considered this argument and law review article in *Nooner v. State, supra*. In *Nooner*, we emphasized the United States Supreme Court's requirement that a discriminatory purpose must

be proved on the part of the decision-maker in the defendant's particular case. *McClesky v. Kemp*, 481 U.S. 279 (1987). As in *Nooner*, Lee's allegations are very general. He has offered no proof to show how his due process or equal protection rights were violated by a biased or arbitrary judge or jury. Thus, due to absence of proof of discriminatory purpose, we cannot say that the trial court erred in denying Lee's motion.

See also, *Nooner v. State*, 322 Ark. 87, 105, 907 S.W.2d 677 (1995).

Williams next argues that Arkansas's capital murder statute, Ark. Code Ann. section 5-10-101, is void for vagueness. This argument, too, has already been rejected. *Lee, supra.* at 702.

Mr. Williams also argues the death penalty is cruel and unusual. This argument has been repeatedly rejected. *Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998), *cert. den.* 119 S.Ct. 1451 (1998) citing *Pulley v. Harris*, 117 S. Ct. 37 (1984).

Next, Williams argues the statutory aggravating circumstances are vague and overbroad. This argument, too, has been rejected. As we stated in *Ruiz v. State*, 299 Ark. 144, 155, 772 S.W.2d 297 (1989), "The final phase of the argument is that the aggravating circumstances are vague and overbroad. We have considered and rejected that argument previously without disagreement by the Supreme Court." *Gregg v. Georgia*, 428 U.S. 153 (1976); *Gardner v. State*, 296 Ark. 41, 55, 754 S.W.2d 518, 525 (1988); *Snell v. State*, 290 Ark. 503, 518, 721 S.W.2d 628, 634 (1986), *cert. denied*, 108 S.Ct. 202 (1987); and *Collins v. State*, 261 Ark. 195, 200-01, 548 S.W.2d 106 (1977), 119-20, *cert. denied*, 434 U.S. 878 (1977)."

Williams also asserts victim-impact evidence is unconstitutional. This argument is without merit. As noted in *Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998), cert. den. 119 S.Ct. 1471 (1999), we have upheld the constitutionality of the victim-impact statute on many occasions. See *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998); *Lee v. State*, 327 Ark. 692, 942 S.W.2d 231 (1997); *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996); *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995). In all of the appellant's various assertions relative to the death penalty,

no demonstration of prejudice or error with respect to its imposition in the specific facts of this case has been persuasively made.

*Error in admission of a previous conviction for a subsequent crime*

Based upon our holding in *Hill v. State*, 289 Ark. 387, 731 S.W.2d 233 (1986), Williams contends the trial court erred in admitting evidence of appellant's kidnapping of Karen Nicols. It is undisputed that Williams abducted Karen Nicols four days following his abduction and murder of Stacy Erikson. Williams argues that in *Hill*, we construed "previous committed felony" to mean evidence of criminal acts occurring prior to the acts for which the defendant is now being tried. He asserts that the purpose of this aggravating circumstance is to show the defendant's history of violence. Appellant misconstrues our holdings on this point. In *Hill*, we upheld the admission of the crimes used to support a finding of an aggravating circumstance. In construing the meaning of "previous felony"as an aggravating circumstance, we stated:

> Since there are other avenues by which the state can prove crimes immediately connected with the principal crime, the only logical conclusion is that section (3) applies to crimes *not connected in time or place* to the killing for which the defendant has just been convicted. In this case the crimes used to prove an aggravated circumstance involved other victims, in another place and previously in time. Therefore, they were properly used as an aggravating circumstance. (Emphasis added.)

From a careful reading of *Hill*, it is apparent that it did not lay down an inviolate rule that "previous felony" invariably means actions occurring before the killing *sub judice*. Rather, it means that it pertains to crimes not connected in time and place. It just so happened that in *Hill*, the alleged felony occurred at a different place and at a different time which was prior to the killing for which Hill was charged. This analysis of *Hill* is supported by our later holding in *Sanders v. State*, 317 Ark. 328, 878 S.W.2d 391 (1994).

In *Sanders*, the appellant contended that the trial court erred in admitting evidence of a murder conviction as an aggravat-

ing circumstance where the murder occurred approximately one month after the murder for which he was then being tried. As a case of first impression, we cited persuasive authority from other jurisdictions.[1] We noted the distinction between our statute using the term "previous felony" and the statutes of those jurisdictions which used the term "previous conviction" or in the case of Florida which used the term "previous crimes." We then construed our statute involving previous felony, Ark. Code Ann. § 5-4-604(3), as follows:

> Implicit in the Arkansas statute's phrase "previously committed another felony," which itself is supported by the statutory elaboration of the element of the "the use of threat of violence" and "the creation of a substantial risk of death or serious physical injury," is at least the contemplation of a conviction. Indeed, proof of a conviction serves to establish the aggravating circumstance of a previous violent felony. And, it should be recalled, the Florida court stressed in *Daugherty* that the purpose of the statute was to ensure that "any violent crime for which there was a conviction at the time of the sentencing should be considered as an aggravating circumstance." (Citation omitted.)

Ultimately, we held that "the trial court did not err in allowing the State to introduce evidence of Sanders's conviction for the murder of Frederick LaSalle." *Id.* at 339. We based that holding on the rationale that the "fundamental thrust of the Arkansas aggravating-circumstances statute is prospective . . . Naturally, a violent felony that was committed after the killing in question (but which resulted in a conviction prior to the sentencing hearing) would have considerable bearing on a convicted murderer's propensity to 'strike again.'" *Id.* at 338. Hence, it is evident that the purpose of this aggravating circumstance is not simply to show the defendant's violent history, as appellant contends, but it is also intended to show the defendant's propensity for a violent future. "Previous felony" can thus include felonies for which the defendant was convicted prior to the sentencing phase of the murder trial even though the underlying felonious conduct occurred after the murder.

---

[1] *Daugherty v. State*, 419 So.2d 1067 (Fla. 1982); *Ex Parte Coulter*, 438 So.2d 352 (Ala. 1983); *State v. Steelman*, 612 P.2d 475 (Ariz. 1980).

 In the instant case, Williams, therefore, mistakenly asserts that a violent felony is not admissible as an aggravating circumstance unless it was committed previous in time to the capital murder at issue. Ms. Errickson was kidnapped, raped, and murdered on November 20, 1994. Karen Nichols was kidnapped on November 24, 1994. However, Williams's conviction on the Karen Nichols kidnapping predates the trial on Ms. Errickson's murder but under *Hill* and *Sanders* is admissible as a section 5-4-604(3) aggravating circumstance of a previous felony because it was not connected in time or place to the murder and demonstrates a propensity for further violent conduct. The federal constitution permits both a backward-looking and a forward-looking inquiry. *Tuilaepa v. California*, 512 U.S. 967 (1994). We hold, therefore, that the trial court did not err in permitting the State to establish a section 5-4-604(3) aggravating circumstance by admission of a kidnapping conviction based upon an abduction occurring subsequent to the capital murder.

*Admission of testimony of a rape for which he was tried*
*but not convicted*

Williams was convicted for the November 24, 1994, kidnapping of Karen Nichols. There was also a rape charge; however, the jury deadlocked, and the rape charge was nol prossed. We do not reach the issue of whether a previously committed felony for which there is no conviction may be considered by the jury as an aggravating circumstance under Ark. Code Ann. section 5-4-604(3) because we find only the conviction for kidnapping was introduced. A review of the record shows the prosecutor introduced evidence of appellant's 1986 aggravated-robbery conviction and the Karen Nichols kidnapping conviction. The record reveals the following sequence of events relative to the Nichols kidnapping:

1. After the jury left the courtroom to deliberate on guilt, the State told the court in the penalty phase the aggravating circumstances would be:

a. "Pecuniary gain;"

b. "Cruel and depraved;" and,

c. "aggravating robbery prior, kidnapping prior." TR 1040.

2. A side-bar discussion during the penalty phase indicates the aggravated robbery from 1986 and the kidnapping of the victim on November 24, 1994, would be introduced. TR 1054 and 1057.

3. Defense counsel stated in a discussion with the trial court, "[A]s to the kidnapping, the Court has previously ruled that that is a crime of violence, and I believe there is sufficient case law to back that up. There was also in that case a charge of rape that the jury hung on, and the State later nol-prossed that case. I would ask there be no mention of that activity." TR 1041.

4. The State countered that the kidnapping was for the purpose of deviate sexual activity, and therefore, the activity was part of the kidnapping conviction. The trial court stated, "Yeah, I think it was kidnapping for the purpose of, and that's not a conviction of the rape." TR 1041-1042.

5. In the course of summing up on the aggravating circumstances, the trial court notes there is proof of two priors; however, the prosecutor when asked about witnesses states, "We'll put on Karen Nichols, as to proof of the rape." TR 1045.

6. Still later in the penalty phase the judge stated, "She's [Karen Nichols] going to get into the purpose of the kidnapping. Well, I'm overruling an objection and you're going to have to live with whatever the folks upstairs. . . ." The Prosecutor stated, "I understand." TR 1058.

7. The victim was specifically asked by the prosecutor, "What, if anything, did he do to your body?" She testified of the events including demands she disrobe, digital penetration and Williams's simultaneous activity. TR 1061.

8. Defense counsel states, "Your honor, I want to renew my previous motion at this time to any discussion by this lady of any sexual offense, aside from the kidnapping of which he was convicted." TR 1056.

9. The defense asserts the prosecution was going to get into "sexual contact" with Karen Nichols. The prosecutor states, "Absolutely," and states the kidnapping was for the purpose of deviate sexual activity.

10. In closing on the penalty phase, the prosecutor stated, "The second aggravating circumstance, Ladies and Gentlemen, are prior violent felonies. Does Mr. Williams have prior violent felonies? Aggravated robbery, yes; kidnapping, yes. You heard from Karen Nichols. You heard what happened to her. We've proven to you beyond a reasonable doubt." TR 1097.

Williams was convicted of kidnapping Karen Nichols for the purpose of deviate sexual activity. The code provides in pertinent part:

Ark. Code Ann. § 5-11-102. *Kidnapping.*

(a) A person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty with the purpose of:

. . .

(4) Inflicting physical injury upon him, or of engaging in sexual intercourse, deviate sexual activity, or sexual contact with him. . .

▇▇ The previous felony at issue is kidnapping for the purpose of deviate sexual activity. There was no mention to the jury of the rape charge. There was no introduction of the elements of rape or argument of rape as to Karen Nichols. Based upon defense counsel's argument at trial, it appears Williams felt the jury should only be told that the previous felony was kidnapping and that kidnapping is a violent crime. However, the specific crime for which he was convicted included sexual activity. We hold the court did not err in admitting Karen Nichols's testimony.

*Error in introduction of the Shellstop video and Tammy Victoria*

▇▇ ▇▇ Williams argues the events with Tammy Victoria are not relevant and were prejudicial. "This court has repeatedly ruled that trial courts have broad discretion in deciding evidentiary issues, including the admissibility of evidence under Rules 403 and 404(b), and that those decisions will not be reversed absent an abuse of discretion. See, e.g., *Neal v. State*, 320 Ark. 489, 898 S.W.2d 440 (1995); *Lindsey v State*, 319 Ark. 132, 890 S.W.2d 584 (1994). We conclude appellant has failed to show an abuse of discretion." *Sasser v. State*, 321 Ark. 438, 447, 902 S.W.2d 773

(1995). The evidence is relevant, however, for the permissible purpose of showing motive, opportunity, intent, and a plan. Arkansas Rule of Evidence Rule 404(b) provides for admission of such evidence. The similarity of circumstances between the two events is sufficient to support the trial court's decision. *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995).

### Crime scene and autopsy photos

██ ██ Williams next argues the photos did not have a tendency to prove facts but rather were intended to inflame the jury. All photographs were not admitted. The trial court carefully reviewed the photos. The trial court showed care that the photos not be cumulative and that each served to prove a fact. Specifically, the autopsy photos were in aid of the medical examiner Dr. Sturner's testimony. "It is well settled that the admission and relevancy of photographs is a matter within the sound discretion of the trial court. *Carmargo v. State*, 327 Ark. 631, 940 S.W.2d 464 (1997). We have further held that even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand testimony. *Id.* Here, the State used the three photographs to show the state of the body after the attack and the number of wounds, including one to the victim's back and another defense wound and slash cut to his wrist." *Chase v. State*, 334 Ark. 274, 282, 973 S.W.2d 791 (1998). We do not find the trial court abused its discretion.

### Testimony of Paul Gabucci

██ Finally, Williams asserts it was error to admit the testimony of Mr. Gabucci, which placed Jimmy Jackson at work at the time of the abduction. Appellant had contended in his statement to police that Jackson was involved in the abduction. He again argues as with regard to his own statement being false, that the prosecution knew Williams's assertion about Jimmy Jackson was a fabrication. For the same reasons stated above with respect to the statement, the testimony was admissible. Evidence of Williams's

lies to throw the blame on others casts light on his own culpability.

*Rule 4-3(h)*

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

Affirmed.