Willie BANKS, Jr. *v.* STATE of Arkansas

CR 82-38                                    639 S.W.2d 509

Supreme Court of Arkansas
Opinion delivered September 20, 1982
[Rehearing denied October 25, 1982.]

*Harold L. Hall,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. After a trial by jury, appellant, Willie Banks, Jr., was convicted of rape and sentenced as a habitual offender to 30 years in the Arkansas Department of Correction. On appeal, we affirm.

About noon on Thursday, May 7, 1981, appellant went to the victim's apartment asking for the telephone number of the victim's twin sister. He had previously dated the sister while she was visiting in Little Rock.

The victim testified as to what transpired in her apartment: She stated that appellant talked for awhile and then stated "I want to be with you." She objected and attempted to go around him but he grabbed her, telling her to sit down. He then stated in a loud voice, "You're going to be with me or I'm going to get crazy. I can get crazy." He ordered her to go into the bedroom, and "pull your panties off." He then forced her to have sexual intercourse twice. He also threatened her about going to the police, telling her that if she did, he would "do something crazy" to her and "get" her parents and relatives. After the bedroom incident, he followed her around the apartment, continuing to threaten her. At one point she was able to yell out the door for help but he pushed her back inside and pulled her over to the living room couch. At that time she said, "Please don't make me do this." He told her to "Shut up . . . before I beat you in your head," and again had sexual intercourse with her. She eventually escaped and locked herself in the bathroom, where she stayed 35-45 minutes. She heard appellant leave shortly before 3:00 p.m. The victim did not have a telephone, so she waited until her next door neighbor came home before telling anyone about the rape. The neighbor's girlfriend called Rape Crisis about 6:00 p.m.

Appellant argues that the evidence is insufficient to support the conviction because of alleged inconsistencies in the victim's testimony. Appellant first contends that the victim's testimony as to whether her sundress was on or off is inconsistent. However, a reading of the victim's entire testimony reveals that she testified that her sundress remained on during the first rape, but that she removed it at appellant's direction before one of the subsequent rapes.

Appellant also argues that appellant's testimony as to the time of the rape is inconsistent, alleging that at one time she said it was about 12:00 p.m. or 12:15 p.m. and another time she said it was around 3:00 p.m. This alleged inconsistency is again resolved by a reading of her entire testimony, which reveals that she was raped at various times, the first occurring around noon and the last occurring at approximately 3:00 p.m.

Appellant also argues there is insufficient evidence that the rape was committed with the requisite force. Forcible compulsion is an element of rape and is defined by Ark. Stat. Ann. § 41-1801 (2) (Repl. 1977) as:

. . . physical force, or a threat, express or implied, of death or physical injury to or kidnapping of any person.

Here, the victim's testimony indicates that she was subjected to both express and implied threats of physical injury: The victim testified that when she objected to appellant's first advance and attempted to get around him, he grabbed her and told her to sit down. He then told her that he could "get crazy." She testified that she was scared not to go into the bedroom when he told her to go. "I was afraid he might jump on me and beat me up." She testified that prior to sexual intercourse in the living room appellant did threaten to beat her. She also testified that she was trembling and crying throughout the entire ordeal.

We stated in *Mills* v. *State*, 270 Ark. 141, 603 S.W.2d 416 (1980) that subjective feelings of fear of physical injury by the victim must be based on some act of the accused that can be reasonably interpreted to warrant such fear. The above testimony is sufficient to show that the requisite force was present and that the victim's fear was warranted.

Appellant argues that the trial court erred in proceeding to trial without the presence of two witnesses subpoenaed by appellant. The investigator for the public defender testified that one witness, a cousin of appellant named Carl Banks, was afraid to come to court because there were too many

warrants out for him. He stated that the second witness, Tommy Jackson, was served and promised he would come, but had been put in jail, then released, and could not be located.

The substance of the witnesses' testimony was disclosed by defense counsel at a pretrial hearing. He stated that Carl Banks would testify that he had seen appellant and the victim together when they came over to his apartment. However, counsel was unable to say whether the witness could tell the victim and her twin sister apart. The other witness, Tommy Jackson, would testify that he left appellant at the victim's house while he used appellant's car for two or three hours. On the day of the trial, defense counsel waived the presence of the witnesses by stating "Even if they [the witnesses] were here, it would be very doubtful if I would use them."

Appellant has failed to show how he was prejudiced by the failure of these witnesses to testify. Carl Banks's testimony that appellant and the victim had come to his apartment would not aid appellant's defense, since it was not shown that Banks could tell the difference between the victim and her twin sister. Tommy Jackson's testimony that he had dropped appellant off at the victim's apartment would not materially help appellant's case either because it is undisputed that appellant had been to the apartment while dating the victim's twin sister. Under these circumstances, it was not error for the trial court to proceed to trial without the two witnesses.

Appellant's last point for reversal is that a mistrial should have been granted because at trial the prosecutor asked whether appellant had given a statement after he received the Miranda warnings. Appellant's argument is based upon the following exchange between the prosecutor and a Little Rock police officer:

Q Did he [appellant] acknowledge whether or not he understood his rights?

A Yes, sir. He said he understood them.

Q And, as a result of that, did he give you any statement concerning . . .

At that point appellant's attorney objected and after a bench conference the question was withdrawn. Defense counsel moved for a mistrial after the officer finished testifying, which was denied by the court:

THE COURT:

I don't think there has been any inference to the jury. . . . Bill, this jury has heard and I have heard Defense Counsel on hundreds of cases where they don't advise them of their rights just raise Cain because they don't advise them. And this jury may very well think whether he made a statement or not he should be advised of his rights. And most people think they are from TV.

There was no question about a statement, whether he did or didn't. So, there's no inference for the jury. And, as far as I'm concerned, there's no prejudice to the Defendant. The jury just thinks he was advised of his rights, which they're supposed to do, whether they took a statement or not. That has no import one way or the other.

So, I'll overrule your motion.

The court did not err in overruling the motion. The jury received absolutely no prejudicial information as to whether appellant did or did not give a statement. We cannot presume prejudice from the above exchange.

Affirmed.