Tommy Ray MOSLEY v. STATE of Arkansas

CR 95-872                                   914 S.W.2d 731

Supreme Court of Arkansas
Opinion delivered February 5, 1996

*Daniel D. Becker* and *Michael E. Harmon*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

BRADLEY D. JESSON, Chief Justice. The appellant, Tommy Ray Mosley, was convicted of rape and sentenced as a habitual offender to life imprisonment. On appeal, he argues that the State's evidence was insufficient to satisfy the forcible compulsion element of rape, and that the trial court erred in allowing a State's witness to testify at trial when the State had not complied with the rules of discovery. We affirm.

The State elicited the following testimony at trial. The victim, Sherry Christian, testified that she went to the Horse Shoe Bar in Hot Springs around 7:00 p.m. She was upset over a fight with her boyfriend. The appellant, Tommy Ray Mosley, arrived at the bar around 8:30 p.m. Sherry and Mosley had met the previous weekend at a country dance hall, where Mosley had given her his phone number. Mosley approached Sherry and asked her why she had not called him. The two talked for about fifteen minutes before Sherry asked Mosley to give a friend, Bill Branch, and her a ride home. Mosley agreed, and the three left the bar around 9:00 p.m. They drove to the home of Branch's brother, Greg Branch, who was Sherry's former boyfriend. Mosley and Sherry stayed at the residence for approximately fifteen minutes before Sherry stated that she needed to go meet her babysitter. After Sherry and Mosley got in his car, Mosley stated that he needed to go by his sister's house and get money for gas. Sherry asked to be let out, but Mosley told her it would only take a minute and then he would take her home.

Mosley then drove to a remote area. Sherry again stated she wanted to go home, but Mosley told her that he would not take her home "until I get what I'm here for." She became frightened and attempted to leave the car. Mosley grabbed her arm and told her that he was going to get what he wanted and he was there "to play games." Sherry told Mosley that her uncle and others would be looking for her, but Mosley started trying to grab and kiss her. When she scratched Mosley and began pulling his hair, Mosley called her names and began to choke her until she vomited. The two struck each other and pulled each other's hair, and Mosley bit her on the neck. When Sherry began vomiting a second time, she told Mosley she would do whatever he wanted if he would let her out of the car. When he did, she began to run. He grabbed her, and the two struggled in the dirt. He dragged her onto the hood of the car and began choking her. When Sherry tried to yell for help, Mosley threatened to kill her. She then obeyed Mosley's directions to pull down her shorts and underwear. While Sherry continued to fight, Mosley fondled her before putting his penis in her, telling her that "he was going to do it so hard that he was going to tear [her] open." According to Sherry, Mosley "pounded [her] and pounded [her] as hard as he could" and told her, "Oh, you're going to like it. You like it. You know you like it."

Mosley eventually ordered Sherry to get dressed and to get back in the car. As he drove her to her babysitter's house, he apologized and asked her not to tell anyone what had happened. From the babysitter's, Sherry went to the hospital for treatment.

Marnie Keck, a nurse at the hospital, described Sherry as being very emotional. According to Keck, she was dirty and scraped up, and had a very disheveled appearance. Keck observed fresh bruises on her throat and under her left and right eyes, and a very large bruise over her left eye. Keck further observed a bite mark on Sherry's neck, dried blood on both her inner thighs, and dirt on her legs and abdomen.

Dr. Gene Shelby treated Sherry at the hospital. He testified that she was very tearful and anxious. He noticed some bruising to her face evidencing recent trauma. In completing a pelvic exam, Dr. Shelby noted some superficial tears to the opening of her vagina. These wounds appeared to be fresh wounds, and

were "completely unrelated" to Sherry's recent delivery of her child. In examining the vaginal vault, Dr. Shelby observed a small amount of clear fluid that was consistent with ejaculation. Dr. Shelby concluded that there were "a lot of signs of forced sexual intercourse."

Officer Cory DeArman of the Garland County Sheriff's Office interviewed Sherry at the hospital. According to DeArman, Sherry looked distraught and had been crying. She had twigs and dirt in her hair. DeArman further observed a red mark on Sherry's right eye and marks on her neck.

When Sherry went to the sheriff's office a day later, Officer Sarah Love photographed the bruises on her face and bite mark on her neck. Deputy Sheriff Mike Brown testified that, when Mosley was arrested and brought to jail on September 2, he observed scratch marks on Mosley's neck, back, and stomach.

At the close of the State's case-in-chief, Mosley moved for a directed verdict, arguing that the State had failed to prove the forcible compulsion element of the rape charge. The trial court denied the motion, and Mosley testified on his own behalf. He admitted to having hit, bitten, and choked Sherry on the date in question; however, he claimed that he and Sherry "kiss[ed] and ma[de] up" and engaged in consensual sexual intercourse. On cross-examination, Mosley stated that there were several reasons for the altercation. First, he was "a little bit" jealous that Sherry talked to Greg Branch when they were at Branch's house. He also stated that he was hurt over problems he was having with his own girlfriend.

At the close of all the evidence, Mosley renewed his motion for directed verdict on the ground that there was insufficient evidence of forcible compulsion. The jury returned a verdict finding Mosley guilty as charged. After hearing evidence of Mosley's six prior felony convictions, the jury recommended that he be sentenced to life imprisonment. The trial court entered judgment accordingly, and Mosley appeals.

### I. Sufficiency of the evidence

We have recently repeated our guidelines for reviewing challenges to the sufficiency of the evidence in *Pike* v. *State*, 323 Ark. 56, 912 S.W.2d 431 (1995):

In a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State and sustains the judgment of conviction if there is substantial evidence to support it. *Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion conjecture. *Williams* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989). In reviewing the sufficiency of the evidence, we need only consider evidence in support of the conviction. *Id.*

323 Ark. at 60, 912 S.W.2d at 433-4, *citing Mills* v. *State*, 322 Ark. 647, 654, 910 S.W.2d 682, 686 (1995). Specifically, Mosley contends that the State failed to prove an element of the rape charge, namely forcible compulsion. Rape is defined in Ark. Code Ann. § 5-14-103 (Repl. 1993), in pertinent part, as follows:

> (a) A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person;

> (1) By forcible compulsion[.]

"Forcible compulsion" is defined as "physical force, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2) (Repl. 1993). We have defined "physical force" as "any bodily impact, restraint or confinement, or the threat thereof." *Dillon* v. *State*, 317 Ark. 384, 877 S.W.2d 915 (1994); *citing Strawhacker* v. *State*, 304 Ark. 726, 804 S.W.2d 720 (1991). The test for determining whether there was force is whether the act was against the will of the party upon whom the act was committed. *Caldwell* v. *State*, 319 Ark. 243, 889 S.W.2d 771 (1995); *Spencer* v. *State*, 255 Ark. 258, 499 S.W.2d 856 (1973).

In this case, there was substantial evidence of forcible compulsion. Sherry's graphic description of the incident need not be repeated. Indeed, the victim's testimony alone is sufficient to sustain a conviction for rape. *See Laughlin* v. *State*, 316 Ark. 489, 872 S.W.2d 848 (1994). Her account clearly met the test of showing that the act was committed against her will. In addition to the victim's testimony, the State offered the testimony of

Nurse Keck, Dr. Shelby, and Officer DeArman, all of whom described the victim's injuries and emotional state on the date in question. Such evidence corroborates Sherry's version of the incident.

█ Mosley claims that the State's evidence was insufficient to prove forcible compulsion because the victim's injuries could have been caused either by a "physical fight" she had earlier that night with her boyfriend, or by the recent delivery of her child. However, the victim denied that either she or her boyfriend had hit the other. Moreover, Dr. Shelby testified that superficial tears to the victim's vagina were unrelated to the delivery of her child, and, that, in his opinion, there were "a lot of signs of forced sexual intercourse." The jury is free to believe all or part of a witness's testimony. *Pike* v. *State, supra*; *State* v. *Long*, 311 Ark. 248, 844 S.W.2d 302 (1992). The jury obviously believed the medical testimony and that of the victim over Mosley's version of the events. In sum, the State presented sufficient evidence of forcible compulsion.

## II. Discovery violation

For his second point, Mosley claims that the trial court erred in permitting David Worley, a witness for the State, to testify. On the morning of trial, counsel for Mosley learned that the State had issued subpoenas for Worley and Ralph McMillan. The State maintained that these witnesses had taken blood and saliva samples from Mosley, sealed them, and sent them to the sheriff's office, which in turn forwarded the samples to the state crime lab. Thus, the State contended that their testimony would be limited to establishing a chain of custody. The trial court, over Mosley's objection, ruled that the witnesses could testify, but their testimony would be limited to establishing a chain of custody.

McMillan did not testify at trial. Worley testified that, while employed as a respiratory therapist and nurse at St. Joseph's Regional Health Center, he used an Arkansas Sexual Assault Kit to collect evidence from Mosley. He further testified that he was present when Mosley's blood was drawn, put into a test tube, and placed in a sealed envelope. Worley also testified that he collected a saliva sample for Mosley, sealed it in an envelope, placed the envelope in the evidence kit, and gave it to a

deputy sheriff. Edward Vollman, a forensic serologist with the state crime lab, later testified that semen found on Sherry's shorts and secretions preserved from a vaginal swab were consistent with secretions by someone with Mosley's blood type. Thus, Vollman stated that Mosley could not be excluded as a person who may have had sexual intercourse with Sherry.

■ We have recently reviewed the pertinent rules of discovery in *Mills* v. *State, supra*:

> Under Ark. R. Crim. P. 17.1(d), the State is required to disclose to the defense any material or information within its knowledge, possession, or control which tends to negate the guilt of the defendant. Ark. R. Crim. P. 19.2 further imposes a continuing duty to disclose this information. *Lewis* v. *State*, 286 Ark. 372, 691 S.W.2d 864 (1985). Under Rule 19.7, if there has been a failure to comply, the trial court may order the undisclosed evidence excluded, grant a continuance, or enter such order as it deems proper under the circumstances. *Id.* In some situations, a recess granted to interview the witness is sufficient to cure the failure to comply with the Rules of Criminal Procedure. *Id.*; *see Dupree* v. *State*, 271 Ark. 50, 607 S.W.2d 356 (1980); *Hughes* v. *State*, 264 Ark. 723, 574 S.W.2d 888 (1978).

322 Ark. at 656-657. It is the prosecutor's responsibility to provide reports of scientific tests and any information or materials concerning witnesses he or she intends to call. Ark. R. Crim. P. 17.1(a)(i), (iv); *see also Burton* v. *State*, 314 Ark. 317, 862 S.W.2d 252 (1993).

■ In the present case, Mosley filed several motions for discovery. The trial court entered at least two discovery orders in which it directed the attorneys to file a list of witnesses. The State provided witness lists to Mosley on September 27, 1994, and on April 17, 1995. Neither list included Worley's name. Clearly, the State violated the discovery rules and such violation should not be dismissed lightly. However, the key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Burton* v. *State, supra*; citing *Scroggins* v. *State*, 312 Ark. 106, 848 S.W.2d 400 (1993).

In this case, Mosley's theory was that the act of sexual intercourse had occurred, but it was consensual. This position was conveyed to the jury in Mosley's opening statement. Thus, the admission of Worley's testimony, offered to establish the chain of custody of Mosley's blood and saliva samples used to prove that he could have had sexual intercourse with Sherry, was harmless error. It was in fact consistent with Mosley's version of what occurred. As Mosley has shown no prejudice, no reversible discovery violation exists.

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and no prejudicial error has been found which would warrant reversal.

Affirmed.