Kedron JOHNSON *v.* STATE of Arkansas

CA CR 01-1015

94 S.W.3d 344

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered December 4, 2002

*Brent Baber Law Firm*, by: *Bill Luppen*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. This is an appeal from the Pulaski County Circuit Court where appellant, Kedron Johnson, was convicted and sentenced to serve 300 months in the

Arkansas Department of Correction for the rape of L.P. On appeal, appellant argues that the evidence was insufficient to sustain the verdict and that the trial court unduly limited his cross-examination of the victim. We must affirm.

■ The appellate court treats a motion for a directed verdict as a challenge to sufficiency of the evidence. *Jones v. State*, 348 Ark. 619, 74 S.W.3d 663 (2002); *Pickens v. State*, 347 Ark. 904, 69 S.W.3d 10 (2002). The test for determining sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial; substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Id.* On appeal, the evidence is viewed in the light most favorable to the State, and only evidence that supports the verdict is considered. *Id.*

Appellant's first contention is that the evidence was insufficient to sustain his rape conviction due to inadequate proof of forcible compulsion. This argument is based on the fact that L.P. testified at trial that appellant never threatened her and that he never used any force against her. We disagree.

■ ■ Arkansas Code Annotated section 5-14-103(a)(1)(A) (Supp. 2001) provides that "[a] person commits rape if he engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion." Forcible compulsion means "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2) (Supp. 2001). Physical force is any bodily impact, restraint or confinement, or the threat thereof. *Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999); *see also Freeman v. State*, 331 Ark. 130, 959 S.W.2d 400 (1998). In a rape case, the test for determining whether there was force is whether the act was against the will of the party upon whom the act was committed. *Sublett v. State*, 337 Ark. 374, 989 S.W.2d 910 (1999); *see also Caldwell v. State*, 319 Ark. 243, 891 S.W.2d 42 (1995).

One June 15, 2000, L.P. was kidnapped at gunpoint by two men as she left her job for the evening. The men placed her in the back seat of her vehicle and drove her to a home where she was repeatedly raped. L.P. had been at the home for five or six hours when she encountered the appellant, who also had intercourse with her. L.P. was eventually released, and shortly thereafter she contacted the police. Appellant, along with his other co-defendants, was later arrested and charged.

L.P. testified that she had never seen appellant before and that when he came into the room, she was "pretty hysterical and panicking." She stated that:

> He came in and said something like hey or something like that and told me I was pretty. I told him that I had to go the bathroom and I started walking to the bathroom. I did not really need to go to the bathroom, but I thought that if I could get away from him for a few minutes, he would not want to assault me in the way the others did. I had no clothes on. I thought if I could get out of his sight for a while he would not want to do that. He followed me into the bathroom. He told me that it had been a long time for him. He said he had been in some sort of rehab facility.

> When he said that, I knew what he was going to do. I said, 'Please don't.' He told me again that it had been a long time. I told him that all these guys had been through me and I can't do it. I asked him to please don't. I said it several times. He looked away. I noticed that he looked at the wall a lot and smiled. He kept saying it had been a long time. He told me to get on the floor on those cushions on my back. I told him when I did that to please don't. He took his pants down and he raped me. . . . I was continually telling him, 'Please don't.' After he was finished, he got up and left.

* * *

> When I was in the room with this defendant, I made it clear to him that I did not want to have sex with him. I said it a lot. I was begging. I did not want it to happen. I wanted him to know that I did not want it to happen. All of those other guys had been through me and I told him that I just could not take it any more.

I made it clear to him that this sex was against my will and he raped me anyway.

■ We note that the State did not try appellant as an accomplice. In fact, just before the State made its opening statement, the deputy prosecuting attorney stated the following to the court outside the purview of the jury:

We want defense counsel to know that our case is going to consist of the victim's abduction which explains her presence in that house, and the condition in which Kedron Johnson found her. She will say that there were others involved but we are not going to go into who did what to her other than she was raped. We are going to go straight to the Kedron Johnson matter[.]

Thus, we do not address whether or not appellant had knowledge of the aforementioned kidnapping, car theft, or rapes. Consequently, we are only left with a review of the encounter between appellant and the victim. We know that appellant and L.P. were absolute strangers. When appellant entered the room where L.P. was located, he found her in a hysterical and panicky state. There was no consensual initial contact between them. L.P. fled to the bathroom in an effort to get away from appellant. The fact that appellant followed her into the bathroom may be viewed as an element of restraint, which in turn suggests forble compulsion. Moreover, we have the unequivocal language of the victim, begging appellant not to rape her. In sum, there was substantial evidence to support the conviction for rape; therefore, we affirm.

■ ■ Appellant also asserts that the trial court unduly limited his cross-examination of L.P. It is well-settled that the trial court has wide latitude to impose reasonable limits on cross-examination. *Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000); *Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994). A substantial factor is whether the evidence is critical to the defense. *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998). The trial court should also consider such reasonable limitations on a defendant's right to cross-examine witnesses as harassment, prejudice, confusion of the issues, witness safety, repetition, and the relevance of the evidence. *Id.* This court will not disturb the trial

court's discretion in such matters unless that discretion was abused. *Engram v. State, supra.* To determine whether cross-examination restrictions infringed upon an appellant's confrontation rights, we look to the record as a whole to determine if the restrictions imposed created a substantial danger of prejudice to the appellant. *Id.* Such prejudice is not presumed, but must be demonstrated. *Id.* The court will not reverse absent a showing of prejudice. *Gordon v. State*, 326 Ark. 90, 931 S.W.2d 91 (1996).

■ At trial, the State requested that the court limit the defense's cross-examination of L.P. to what happened only between her and appellant. The trial court later required the defense to "[c]onfine it to this defendant." Appellant argues that this limitation prevented him from asking L.P. about her conduct with the other co-defendants and prohibited him from questioning her subjective fear of him. We hold that this information, as the State insists, was simply irrelevant. The existence of forcible compulsion does not depend on the "quantum of force" that is applied, but rather on whether the act is consummated against the victim's will. *See Spencer v. State*, 255 Ark. 258, 499 S.W.2d 856 (1973).

Affirmed.

PITTMAN, ROBBINS, BIRD, and VAUGHT, JJ., agree.

ROAF, J., concurs.

ANDREE LAYTON ROAF, Judge, concurring. I agree that this conviction can be affirmed, but write separately to emphasize that the element of "forcible compulsion" necessary to establish the offense of rape in Arkansas is and has always been more than simply saying "no," in the case of an adult victim. "Forcible compulsion" must be established by "physical force" or a "threat, express or implied, of death or physical injury to or kidnapping of . . . ." a victim. Ark. Code Ann. § 5-14-101(2) (Supp. 2001). Physical force is defined as "any bodily impact, restraint or confinement, or the threat thereof. . ." *Mosley v. State*, 323 Ark. 244, 249, 914 S.W.2d 731, 734 (1996).

Although the supreme court has often said that the "test" to be used to determine whether there was force is "whether the act was against the will of the [victim]," it has done so only in a context where there is clear evidence of some act *by the defendant* which establishes the requisite force. *See e.g., Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999) (appellant abducted adult victim at gunpoint); *Mosley v. State*, 323 Ark. 244, 914 S.W.2d 731 (1996) (appellant choked, dragged, and threatened to kill adult victim, and victim was injured and in disheveled condition); *Dillon v. State*, 317 Ark. 384, 877 S.W.2d 915 (1994) (appellant confined adult victim in his patrol car on deserted road and pulled victim back when she tried to get away); *Spencer v. State*, 255 Ark. 258, 499 S.W.2d 856 (1973) (appellant placed knife to adult victim's throat).

The supreme court has further stated that subjective feelings of fear of physical injury by a victim must be based on some *act of the accused that can be reasonably interpreted to warrant such fear. Banks v. State*, 277 Ark. 28, 639 S.W.2d 509 (1982) (emphasis added) (citing *Mills v. State*, 270 Ark. 141, 603 S.W.2d 416 (1980)). Consequently, the element of forcible compulsion must necessarily focus on the accused's conduct and statements, not on the victim's statements or fear. In this instance, the evidence regarding Johnson's conduct and statements is thin; perhaps we have allowed the victim's very dire circumstances to bolster the evidence against Johnson. The fact that Johnson and the victim were strangers is viewed by the majority as providing an enhanced menace or threat that his language and behavior would perhaps not have conveyed in other circumstances. However, there is no question that the victim in this case was kidnapped, confined, and was in fear for her life, or that she was justified in such fear. Here, Johnson contributed to or prolonged that confinement or fear to some extent, and his conviction can be and should be affirmed.