N. MARK KLAPPENBACH, Judge
Appellant Ulrick Hillman was tried before a Miller County jury on a charge of rape. The jury convicted him, and he was sentenced to ten years in prison. On appeal, appellant challenges the sufficiency of the evidence to support the element of forcible compulsion against the victim. We affirm.
The standard of appellate review is well settled. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Estrada v. State , 2011 Ark. 3, 376 S.W.3d 395 ;
*374 Moore v. State , 355 Ark. 657, 144 S.W.3d 260 (2004). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. Smith v. State , 352 Ark. 92, 98 S.W.3d 433 (2003). When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State, and only evidence supporting the verdict will be considered. Moore , supra.
The criminal information charged appellant with rape, accusing him of engaging in sexual intercourse or deviate sexual activity with the victim, DS, by forcible compulsion. See Ark. Code Ann. § 5-14-103(a)(1) (Supp. 2017). "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. Ark. Code Ann. § 5-14-101(2) (Supp. 2017). The supreme court has defined the term "physical force" as any bodily impact, restraint or confinement, or the threat thereof. Ellis v. State , 364 Ark. 538, 222 S.W.3d 192 (2006). The test we use to determine if there was physical force is whether the act was against the will of the party upon whom the act was committed. Goodman v. State , 2009 Ark. App. 262, 306 S.W.3d 443. The existence of forcible compulsion does not depend on the quantum of force that is applied but rather on whether the act is consummated against the victim's will. Johnson v. State , 80 Ark. App. 79, 94 S.W.3d 344 (2002). A rape victim's testimony alone can constitute substantial evidence to support a rape conviction. Henson v. State , 2009 Ark. App. 464, 320 S.W.3d 19. The jury has the sole authority to evaluate the credibility of evidence and to apportion the weight to be given to the evidence. Starling v. State , 2016 Ark. 20, 480 S.W.3d 158.
The evidence in this case is reviewed here in the light most favorable to the State.[1] The twenty-year-old female victim, DS, went to a nightclub around 11:00 p.m. with her friends. Appellant, a thirty-three-year-old man, was at the nightclub. DS knows appellant because he is the foster brother of her children's father. Appellant had been to her apartment and stayed overnight before with his foster brother. Appellant told DS that he was coming to her apartment when he left the club, but DS told him no. DS left the nightclub around 2:00 a.m., and she was admittedly drunk at that time. DS went home and went to bed wearing a t-shirt and panties; she left her television on, and she fell asleep.
DS was later awakened by the sound of someone banging on her door. She did not answer the door and went back to sleep. She later heard a window opening, but she was in a dream-like state and did not get up to check. DS was awakened around 4:00 a.m. by appellant, who was naked and getting into her bed. She asked appellant what he was doing there and how he got in, but appellant did not respond. She repeatedly told him to leave but he did not. DS testified that appellant climbed on top of her, pushed her on her back, forced her legs open, pulled her panties to the side, and vaginally penetrated her repeatedly with his penis. DS, who is 5 feet 2 inches tall and weighs 128 pounds, tried to fight and struggle, and she repeatedly told him to stop, but appellant pinned her arms *375 down and told her to "just let him do it." Appellant finally got off her, got dressed, and eventually left. DS kept on the t-shirt and panties she had worn; she did not bathe.
DS contacted the police, who came to her apartment and took a statement from her around 8:30 a.m. Officers described DS as upset, and they saw that a window did not have a screen on it. DS told the officers that she had been intoxicated the night before, but she did not seem to the officers to be intoxicated at the time she was interviewed. She eventually told the officers that she knew appellant was the person who had raped her. DS was told to go to the hospital for a rape-kit examination.
The registered nurse who worked with DS at the hospital testified that DS told her that the suspect had lain on top of her, restricted her arms and legs, and penetrated her vagina with his penis multiple times, although DS did not think he had ejaculated. DS told the nurse that she struggled against her assailant. The nurse stated that DS was tearful and that she complained of soreness in her arms and legs. DS had no visible signs of injury or bruising. During the examination, vaginal swabs and cuttings of DS's panties were obtained to test them for the presence of DNA. DS never stayed at that apartment again.
The police called appellant that day, and he came to the police station and voluntarily gave a recorded statement at approximately 1:30 p.m. Appellant said that he knew DS, and he had heard that DS was accusing him of rape. Appellant admitted that he had gone to DS's apartment after he had left the nightclub. He said that he had consumed a few drinks but that DS was very intoxicated. According to appellant, the plan was for him to come to DS's apartment to eat with DS and her cousin. He admittedly had taken the screen off DS's window but claimed that DS had finally let him in through the door. At first, appellant denied having any physical contact with DS, but he later said that he had touched her buttocks under her panties; he denied touching her vaginal area. He vehemently denied having had sex with DS and described her as crazy. Appellant voluntarily provided a DNA sample.
Tests from the Arkansas State Crime Laboratory showed the presence of a component of semen in the panties and sperm in DS's vagina. Appellant and his male relatives could not be excluded as the source of the sperm.
Appellant argues that the circuit court erred in denying his motion for directed verdict in which he had argued that the State failed to prove "forcible compulsion." He contends that DS was very intoxicated that night, that she made demonstrably untrue statements in her testimony, and that there "is a complete absence of corroborating evidence which demonstrates any force was used on" her. Appellant points to the lack of objective evidence of physical trauma, noting the absence of evidence of swelling, bruising, or the like. Appellant does not persuade us that there was insufficient evidence of forcible compulsion to support the jury's verdict.
There is no requirement that there be scientific evidence of rape. See Breeden v. State , 2013 Ark. 145, 427 S.W.3d 5 ; K.B. v. State , 2017 Ark. App. 478, 531 S.W.3d 420. The victim's testimony, if believed by the trier of fact, is sufficient to establish appellant's guilt. Any inconsistencies in the victim's account of what happened are for the fact-finder to resolve, not our court on appeal. See Lowe v. State , 2016 Ark. App. 389, 500 S.W.3d 176 ; Brown v. State , 2009 Ark. App. 873, 2009 WL 4844677. We will disregard testimony *376 that the fact-finder has found credible only if it is so inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ about it. Conte v. State , 2015 Ark. 220, 463 S.W.3d 686. Such is not the case here.
In reviewing this sufficiency challenge, we must view the evidence in the light most favorable to the State and must consider only the evidence that supports the verdict. Arnold v. State , 2018 Ark. 343, 561 S.W.3d 727. Under this standard of appellate review, we hold that there is substantial evidence to support the jury's finding that appellant was guilty of rape. For this reason, we affirm.
Affirmed.
Virden and Whiteaker, JJ., agree.

We point out that appellant's brief contains unnecessary materials in the abstract and addendum. The abstract contains approximately fifty pages relating to the admissibility of certain evidence and to a Batson challenge, none of which is necessary to decide the issue on appeal. Appellant's addendum also contains two motions in limine that are irrelevant to our analysis. We caution counsel to prepare future appellate briefs more carefully and in adherence to the Rules of the Arkansas Supreme Court and Court of Appeals.