Cite as 2020 Ark. App. 434

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CR–20–74

| | |
|---|---|
| | **Opinion Delivered:** September 23, 2020 |
| JIMMIE HOLLAND | APPEAL FROM THE WASHINGTON |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. 72CR-16-2498] |
| V. | |
| | HONORABLE JOANNA TAYLOR, |
| | JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Jimmie Holland was convicted in a jury trial of rape committed against AG. Holland was sentenced to thirty-three years in prison. Holland now appeals, arguing that the trial court erred in allowing the State to offer the victim's "surprise testimony" of penetration because such testimony violated Ark. R. Evid. 403, violated due process, and was a discovery violation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Holland further argues that the trial court erred in denying his motion for mistrial and his posttrial motion for new trial based on the same arguments above regarding the victim's challenged testimony. Holland also challenges the evidence supporting his conviction. We affirm.

Arkansas Code Annotated section 5-14-103(a)(1) (Repl. 2013) provides that "[a] person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person [b]y forcible compulsion." In the felony information charging Holland with rape, the State specifically alleged that Holland committed rape by engaging in *sexual*

*intercourse* with another person by forcible compulsion. "Sexual intercourse" is defined as "penetration, however slight, of the labia majora by a penis." Ark. Code Ann. § 5-14-101(11) (Repl. 2013).

Holland's primary argument on appeal is that the victim should not have been permitted to testify about penetration because her allegation of penetration was not disclosed by the State in the materials it provided during discovery. For this reason, we will discuss the relevant reports that were generated and were made available to the defense prior to trial before our review of the trial testimony.

On the morning after the alleged rape occurred, AG went to the hospital, where she was subsequently interviewed by Officer Justin Collins. Officer Collins made a report of the interview.

According to Officer Collins's report, AG had met Holland on a dating website called Tinder about a week earlier. After about a week of exchanging text messages, AG and Holland agreed that they would meet in person. At first they had planned to meet for drinks somewhere, but AG was having dinner with friends and was running late that night, so they agreed to instead meet at AG's house.

AG told Officer Collins that after Holland arrived at her house, she and Holland watched movies and drank some whiskey. Sometime later, AG lay down to go to sleep and Holland started kissing her, rubbing her breasts, and putting his hand in her underwear. Holland asked AG to put on something more comfortable, and AG changed into a pair of shorts and a t-shirt. Holland continued to touch her then removed her underwear and began performing oral sex. Holland began to penetrate AG with his finger, but he was

2

being too aggressive and AG told him it hurt and to stop. AG stated, however, that she was fine with the oral sex. AG began touching him with her hand and reciprocated the oral sex. This went on for a while, and then they were lying in bed next to each other.

According to AG's account, Holland asked her if she had a condom. She told him she could get one from her roommate but that she did not have one. AG tried to explain to him that she did not want to have vaginal sex because she was not on birth control. Officer Collins's report states:

> Holland then got on top of her and tried for vaginal sex. She said she was on her back and Holland was on top of her and he was trying to force his penis inside of her. AG said she was telling him "no" and she began to squeeze her thighs together to prevent him from penetrating her. She said she continued to tell him multiple times and then she began crying whenever he continued to force himself on her. She said when she began crying he had gotten mad. He sat up and stopped. She said that during this time she was sitting in bed crying and Holland was extremely angry. She stated he was mad and yelling at her.

AG stated that after Holland yelled at her for a while, she laid facing the wall, and Holland began trying to penetrate her from behind. She stopped him again. They argued a second time, and Holland got very loud and threatened to do property damage at the residence.

Eventually AG and Holland lay down to sleep, during which time Holland was rubbing AG and trying to penetrate her with his finger, but AG tensed up and he was unable to. Holland left early the next morning, and after that AG went with her roommate to the hospital.

Detective Scott O'Dell did not personally interview AG, and he relied on Officer Collins's report to prepare an affidavit for probable cause to arrest Holland. In Officer O'Dell's affidavit, he wrote:

3

As they were lying in bed next to each other Holland asked her if she had a condom. She stated no and would try to get one from her roommate. AG stated Holland began trying vaginal sex with her and she tried to explain to him that she did not want to have sex without a condom because she was not on the pill. AG stated Holland became angry, got on top of her, and tried to have sex. AG said he was trying to force his penis inside her as she was saying no. She told him no several times and when he continued to try to force his penis into her vagina she began to cry. This also made Holland angry.

AG underwent a sexual-assault examination at the hospital, and the report from the examination was also made available to the defense prior to trial. Nurse Sue Stockton conducted the examination. During the course of the examination, Ms. Stockton asked AG what had happened. In Ms. Stockton's report, she documented oral sex and digital penetration. However, the report noted, in grid format, an "X" checking the corresponding box labeled "Attempt" for the category "Penetration of vagina by penis." Ms. Stockton's report also gave a narrative of the events, with the following excerpt:

Then he got on top of her and she stopped him because he didn't have a condom. Then he became angry and said why aren't you on birth control. She felt she had to explain. He got on her again and she said, "no - no," she started crying. He got off and got behind her and attempted anal sex. She told him "no." He began yelling a lot and belittling her.

Prior to trial, Holland was also provided with the State's crime-lab reports. The serology report noted that vaginal swabs of AG were negative for semen but positive for P30. The DNA report noted that Holland's DNA was not found on the vaginal swabs but that his DNA was detected on the shorts AG had been wearing that night.

At a pretrial hearing, the prosecutor and defense counsel discussed the possible content of the State's witnesses' testimony. The prosecutor stated that the State was maintaining an open-file policy. The prosecutor also stated, "I just assumed Holland's attorneys are calling the witnesses to see what they are going to testify to because a lot of

4

this is not actually in the reports, but a lot of it is based on my conversation with them." Holland's counsel acknowledged that he had not attempted to call the victim but stated that the State's witnesses do not have to talk to him. Holland's counsel suggested that all of the State's witnesses' statements would need to be disclosed in discovery to be presented at trial to avoid a "trial by ambush."

As the trial date grew near, Holland filed a motion in limine to limit discovery and exclude nondisclosed evidence.[1] Shortly thereafter, the parties discussed via email whether there would need to be a hearing on the motion. In this email exchange, the prosecutor stated that "there's been nothing new in this case for a very long time." Holland's counsel responded, "All I'm trying to do is make sure no witnesses, reports, etc. are added." Holland's counsel advised that a hearing would be unnecessary unless the State had an objection, and the prosecutor responded, "I don't need one."

Subsequently, less than two weeks prior to trial, there was a final email exchange between the parties pertaining to discovery. A summary of these emails is as follows:

HOLLAND'S COUNSEL: We have very limited information from the alleged victim in this case. Hence filing multiple discovery motions. I just want to verify that you don't intend to offer any evidence other than what we have, i.e., Collins's report. We have no audio, video, or written statements from her.

PROSECUTOR: Regarding her statements, I don't believe there is anything outside of the police reports by Collins and O'Dell. I intend to put her on the stand to testify based on what she experienced.

HOLLAND'S COUNSEL: So you intend on her testifying to any experience outside the police report? I am asking because it would be my position that she cannot testify to anything that is outside

---

[1]The record does not show that this motion was ever ruled on by the trial court.

5

discovery. I'm not suggesting that is what you intend to do, but do [want] to clarify.

PROSECUTOR: She will testify based on her experience of the events as she remembers them. Just standard witness testimony, nothing different. She will be limited to her experience and how she responds to the questions asked.

HOLLAND'S COUNSEL: This is a simple question. Is she going to possibly say anything that is not contained in the discovery? I'm not trying to be cagey at all, but there is not much about her allegation in the file. I have brought this up multiple times on and off the record for that very reason. It is my basic contention that she cannot just get up at trial and start testifying to her "experience" that the defense has not been privy to through discovery. I would hope you would agree with that premise. If not, we need to have a hearing about it.

PROSECUTOR: I can't say exactly what she will say and, as a former prosecutor, you know that I cannot be expected to provide everything a witness is going to say in discovery. My expectation is that her testimony will fall within the general structure of what the officer's reports indicate. However, we are dealing with the testimony of a witness based on her experience of events.

HOLLAND'S COUNSEL: This isn't a collateral witness. She is the one making a rape allegation which is the charge. I believe I am entitled to notice of any potential allegation and I would expect to know what she is going to say in its entirety as it pertains to the allegations. There is nothing ancillary about her testimony and we haven't been provided much which is why I am concerned.

PROSECUTOR: I believe you have the general contents of her testimony in the reports by Collins and O'Dell. I don't believe there will be anything major added in the way of allegations.

HOLLAND'S COUNSEL: Fair enough. I'm not trying to be difficult, but I need to make sure I cover all bases on a case of this magnitude.

It is with this backdrop that the jury trial began.

At trial, the State put on the following physical evidence. Sue Stockton, the nurse who examined AG, testified that there was a considerable number of abrasions to AG's genital area. Shelby Pugh, a serologist, testified that AG was given a rape kit, and Ms. Pugh tested the vaginal swabs. Ms. Pugh indicted that no semen was detected on the vaginal swabs but that they were positive for P30. Ms. Pugh testified that P30 is a component of seminal fluid but can also be found in other body fluids. Gisele Hardy, a DNA analyst, testified that no male DNA was found in the vaginal swabs or in AG's underwear but that Holland's DNA was found inside the shorts that AG had been wearing that night.

Three weeks after the alleged rape occurred, Holland agreed to a custodial interview with Officer Brian Hanna, and the audio from this interview was played for the jury. In that interview, Officer Hanna asked Holland if he and AG had had sex, and Holland denied having sex and said he did not even remember kissing her. Holland eventually admitted having been in AG's bed and stated that he may have kissed her and rubbed her butt. Officer Hanna stated that AG's account was the "polar opposite," and he confronted Holland with AG's claims of consensual and nonconsensual sex—specifically, consensual oral sex and nonconsensual penetration. Holland denied having oral sex, and he also denied any penetration.

AG testified about the events that occurred on the night of the alleged rape. AG explained how she had met Holland on the Tinder dating website and then arranged to meet with him in person a week later. AG testified that Holland came to her house, and that they went to her room and watched movies and drank some whiskey. AG got tired of watching movies, and she lay down to go to sleep. At that point, Holland began kissing

AG, and she kissed him back. Holland asked AG to change into something more comfortable, and she put on a pair of shorts and a t-shirt. The kissing continued, and Holland took off AG's shorts and began performing oral sex on her. AG testified that, although she did not really enjoy this, she did not stop him. Holland started using his fingers, and it started to hurt, so AG pushed his hand away and told him to back off. After that, AG performed oral sex on Holland.

AG testified that, at some point, the idea of "having sex" came up. Holland asked AG if she had a condom. Although AG did have a condom, she told Holland she did not have one because she did not want to have sex with him. AG testified that she also told Holland that she was not on birth control, and that "for that reason, I didn't want to have sex too." AG testified that Holland clearly knew that she did not want to have sex. AG testified, "The next thing I remember . . . happening was he was on top of me and he was trying to have sex with me. I just started crying. He continued to push, but eventually stopped because I was crying."

The prosecutor asked AG to explain what she meant by "he was trying to have sex." AG replied, "He was pushing into me and he was able to get the head of his penis—." At that point Holland's counsel objected, stating that "[t]his has been my concern for the entire time this case has gone on. There is nothing anywhere in discovery that says what she's about to say." Holland's counsel argued that if this testimony was allowed, it would be a *Brady* discovery violation as well as a due-process violation because Holland was not given notice. The prosecutor stated, "I believe in all of our meetings that I have made it clear that I believe I can prove penetration." Holland's counsel replied, "I've got nothing in my

8

file that says that." The prosecutor stated, "I'm not required to do your investigation. You have talked to my witnesses probably more than I have. Yet, this is the one witness you don't seem to have talked to."

The trial court advised that it did not believe there had been a discovery violation and that it would allow AG to continue her testimony. The trial court stated further that Holland's counsel could use AG's prior statements to impeach her. Holland's counsel argued that if AG was going to testify that Holland penetrated her vagina with his penis, this was a discovery violation, and he was moving for a mistrial. Holland's counsel asserted that in neither of the two reports he was provided in discovery did AG say that Holland's penis penetrated her vagina. The trial court made the following ruling:

> Officer Collins's report . . . was provided to the defense by the State. This statement that's contained . . . in this report, she said she was on her back and he was trying to force his penis inside of her . . . . She's allowed to explain what that means. She's allowed to say what she meant by "force his penis inside her." She's allowed to say whether he touched her thigh or whether he touched . . . any part of her genitalia. . . . I don't believe that this is any kind of violation and I'm going to allow the testimony. . . . You may impeach her if you desire.

The prosecutor's direct examination of AG continued. The prosecutor asked whether Holland's penis "enter[ed] inside your vagina," and AG said that it did. AG testified that she was trying to squeeze her legs together so he could not go any further. AG stated that "he wasn't deep inside me" but that she had no doubt he had entered her. AG testified that after this occurred Holland got angry with her, eventually lay down by her and tried to fondle her some more, and he left the following morning. After Holland left, AG went to the hospital. AG indicated that, during her interviews after the incident, nobody explained

to her the legal definition of rape, and nobody specifically asked her what she meant by "trying to have sex."

On cross-examination, Holland's counsel attempted to impeach AG with the reports from her pretrial interviews. On cross-examination, AG again testified that Holland penetrated her vagina with his penis, but she acknowledged that in her interview with Officer Collins, "I don't think I ever used those words." Reading from Officer Collins's report, Holland's counsel asked AG about her statements that "he was trying to force his penis inside me," and she "squeezed her thighs together to prevent him from penetrating her." When asked if she disagreed with the latter of these statements, AG responded, "Penetrating me fully? Where he was completely inside of me?" AG then stated that "I don't know if I explained it in depth but I was stressed out." AG stated that Holland was continuing as she was saying no and crying and that he eventually stopped. Holland's counsel also confronted AG with nurse Sue Stockton's report wherein an *attempted* rape was noted along with the statement that "he got on top of her and she stopped him because he didn't have a condom." AG indicated that nobody had told her the definition of rape or that "even just a little penetration" would fit the definition.

George Schiro, a serology and DNA expert, testified for the defense. Mr. Schiro testified that he had reviewed the State's crime-lab reports. Mr. Schiro concluded that no semen or male DNA was found in AG's vaginal swabs. Mr. Schiro also testified that he that thought the crime-lab report documenting the presence of P30 on the vaginal swabs was a "false positive." Mr. Schiro's written forensic report containing these findings was offered by the defense and admitted into evidence.

Based on the evidence presented at trial, the jury found Holland guilty of rape and sentenced him to thirty-three years in prison. After the trial court entered the sentencing order, Holland timely filed a motion for new trial,[2] which was deemed denied by operation of law. Holland now appeals from both the sentencing order and the denial of his motion for new trial.

Although it is not listed as his first point on appeal, one of Holland's arguments is a challenge to the sufficiency of the evidence. When an appellant challenges the sufficiency of the evidence on appeal, we address the sufficiency argument prior to a review of other alleged trial errors. *Kennedy v. State*, 49 Ark. App. 20, 894 S.W.2d 952 (1995). In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict was supported by substantial evidence, either direct or circumstantial. *Armour v. State*, 2016 Ark. App. 612, 509 S.W.3d 668. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resort to speculation or conjecture. *Watkins v. State*, 2010 Ark. App. 85, 377 S.W.3d 286. We review the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Armour, supra.*

In Holland's sufficiency argument raised in this appeal, he does not challenge the State's proof of sexual intercourse. Holland instead argues that there was insufficient evidence of forcible compulsion. "Forcible compulsion" is defined as "physical force or a

---

[2]In Holland's motion for new trial, he alleged that he was denied a fair trial because AG's testimony regarding penetration violated due process, discovery rules, and Ark. R. Evid. 403(b).

threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2) (Repl. 2013).

In support of his argument, Holland cites the concurring opinion in *Johnson v. State*, 80 Ark. App. 79, 94 S.W.3d 344 (2002), for the proposition that the forcible compulsion necessary to establish rape is more than simply saying no in the case of an adult victim. Citing the concurring opinion in *West v. State*, 290 Ark. 329, 719 S.W.2d 684 (1986), Holland asserts that although the supreme court has often said that the test to determine whether there was force is whether the act was against the will of the victim, it has done so only in a context where there is evidence of some act by *the defendant* that establishes the requisite force.[3]

Holland argues that there was no proof that in performing the sex act, he used any weapons, inflicted any blows, or imposed any physical restraints on the victim. Holland contends that because no force beyond the sex act itself was employed and no threats were communicated to establish a reasonable basis of fear, there was insufficient evidence that the sex act was attained by forcible compulsion.

We do not agree with Holland's claim that there was insufficient evidence to support his rape conviction. We discussed the standards for examining the element of "forcible compulsion" in *Hillman v. State*, 2019 Ark. App. 89, 569 S.W.3d 372:

> "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. Ark. Code Ann. § 5-14-101(2). The supreme court has defined the term "physical force" as any bodily impact, restraint or confinement, or the threat thereof. *Ellis v. State*, 364 Ark. 538, 222 S.W.3d 192 (2006). The test we use to determine if there was physical force is

---

[3]We observe that in both *Johnson* and *West* the majority found sufficient evidence to support the jury's finding of forcible compulsion.

whether the act was against the will of the party upon whom the act was committed. *Goodman v. State*, 2009 Ark. App. 262, 306 S.W.3d 443. The existence of forcible compulsion does not depend on the quantum of force that is applied but rather on whether the act is consummated against the victim's will. *Johnson v. State*, 80 Ark. App. 79, 94 S.W.3d 344 (2002). A rape victim's testimony alone can constitute substantial evidence to support a rape conviction. *Henson v. State*, 2009 Ark. App. 464, 320 S.W.3d 19. The jury has the sole authority to evaluate the credibility of evidence and to apportion the weight to be given to the evidence. *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158.

*Hillman*, 2019 Ark. App. 89, at 2, 569 S.W.3d at 374.

Applying these standards, AG's testimony was sufficient to establish the element of forcible compulsion. AG testified that, after she had made it clear to Holland that she did not want to have sex with him, he got on top of her and penetrated her vagina with his penis. While Holland was in the process of this unwanted penetration, AG was crying, saying no, and trying to squeeze her thighs together so he could not penetrate her any further. Holland continued even after AG was saying no and crying. From AG's testimony the jury could reasonably conclude that Holland penetrated AG's vagina with his penis against her will while she attempted to physically resist him. Because this was substantial evidence of forcible compulsion, we hold that Holland's rape conviction was supported by substantial evidence.

We now turn to Holland's arguments that the trial court erred in allowing the State to offer AG's "surprise testimony" of penetration. Holland argues that this testimony should have been excluded because (1) it violated Ark. R. Evid. 403; (2) it violated due process; and (3) it was a discovery violation of *Brady v. Maryland*.

We initially conclude that Holland's challenge to the testimony based on Ark. R. Evid. 403[4] is not preserved for review. Although Holland filed a pretrial motion in limine to excluded surprise testimony under Rule 403, the trial court never ruled on that motion. It is well settled that an appellant must obtain a ruling on his or her argument to preserve it for appeal. *Jones v. State*, 355 Ark. 316, 136 S.W.3d 774 (2003). Although Holland did object to AG's testimony when it was elicited at trial, he made no objection based on Rule 403, and his objection was instead limited to his arguments that this was a *Brady* violation and a denial of due process. Our supreme court has held that a specific objection is necessary to preserve an issue for appeal. *Gilliland v. State*, 2010 Ark. 135, 361 S.W.3d 279. Because Holland did not make a timely Rule 403 objection when the objectionable testimony was offered at trial and he failed to obtain a ruling on the issue, we decline to consider that argument on appeal.[5]

Holland next argues that he was denied due process under article 2, section 8 of the Arkansas Constitution and the Fourteenth Amendment to the United States Constitution because he was not given notice prior to trial that the victim in this case had alleged penetration. It is axiomatic that due process requires that the defendant be provided sufficient notice of the precise criminal charges brought against him and that he must have

---

[4]Arkansas Rule of Evidence 403 provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

[5]We acknowledge that Holland made a second attempt to raise a Rule 403 claim in his motion for new trial. However, this second attempt did not cure the appellant's failure to obtain a ruling on his motion in limine. To preserve a point for appeal, a proper objection must be asserted at the first opportunity, and a ruling must be obtained. *See Boone v. State*, 282 Ark. 274, 668 S.W.2d 17 (1984).

adequate opportunity to prepare his defense. *Johnson v. State*, 71 Ark. App. 58, 25 S.W.3d 445 (2000). When a due-process violation is argued on appeal, our review is de novo. *See Boyd v. State*, 2016 Ark. App. 407, 500 S.W.3d 772.

In support of his due-process argument, Holland cites *Hill v. State*, 65 Ark. App. 131, 985 S.W.2d 342 (1999), where our court held that it violates due process to revoke a defendant's probation based on a probation violation not alleged in the revocation petition. Holland also cites *Fitzhugh v. State*, 296 Ark. 137, 752 S.W.2d 275 (1988), where our supreme court held that due process requires that an alleged contemnor be both notified of a charge of contempt and the specific nature of the charge.

Holland argues that his due-process rights were violated because, although he was charged by criminal information with rape, he was never given any notice of the "precise charges" against him or the issues to be resolved at trial. Specifically, Holland complains that, prior to the trial, the State never provided him with an allegation that penile penetration of the victim's vagina had occurred. Holland asserts that the only information he was given about his alleged acts was in the two reports taken shortly after the alleged rape occurred. He claims that in neither of these reports did AG allege penetration. In Officer Collins's report, the allegations by AG were that Holland got on top of her and "tried for vaginal sex." According to that report, Holland was trying to force his penis inside her and AG was telling him no and she "began to squeeze her thighs together to prevent him from penetrating her." The other report, prepared by nurse Sue Stockton, states that Holland "got on top of her and she stopped him because he didn't have a condom. . . . He got on her again and she said 'no—no,' she started crying." In Ms. Stockton's report she

15

documented only an attempted rape. Holland argues that, from the information made available to him by the State, he was not given notice that AG would testify that there was penetration and that her testimony in that regard came as an unfair surprise.

In addition to the nondisclosure of evidence of penetration during discovery, Holland further alleges that after he repeatedly inquired about this before trial, the State actively misrepresented to him that such allegation did not exist. Holland cites *United States v. Bagley*, 473 U.S. 667 (1985), where the Supreme Court noted that when a prosecutor fails to disclose requested evidence, it is reasonable for the defense to assume from the nondisclosure that the evidence does not exist and to make pretrial and trial decisions based on this assumption. Holland also relies on *Lankford v. Idaho*, 500 U.S. 110 (1991), where the Supreme Court held that it violated due process for the judge to sentence a man to death after the prosecutor told the defendant he would not seek the death penalty.

Holland asserts that he asked the prosecutor whether there would be any evidence presented outside of what had been provided in discovery, and the prosecutor misled him by stating that "I don't believe there is anything outside of the police reports by Collins and O'Dell," and that "I don't believe there will be anything major added in the way of allegations." Citing *Bagley*, *supra*, Holland contends that based on the prosecutor's representations, he reasonably believed that no allegation of penetration existed or would be presented at trial. For these reasons, Holland contends he was denied due process and that this is reversible error.

We disagree. In our de novo review of the record, we hold that Holland has failed to demonstrate a due-process violation. The felony information filed by the State clearly

16

put Holland on notice that the State was alleging vaginal penetration by Holland's penis. The information alleged that Holland committed rape in violation of Ark. Code Ann. § 5-14-103(a)(1), and the specific charge was that he engaged in *sexual intercourse* with another person by forcible compulsion. "Sexual intercourse" is defined as "penetration, however slight, of the labia majora by a penis." Ark. Code Ann. § 5-14-101(11) (Repl. 2013). Our supreme court has held that an information gives sufficient notice to a defendant if it names the defendant, the offense charged, the statute under which the charge was made, and the court and county where the alleged offense was committed; and sets forth the principal language of the statute and the asserted facts constituting the offense. *See Anderson v. State*, 2013 Ark. 332. The felony information filed by the State met these requirements and apprised Holland of the criminal conduct sought to be proved at trial.

Moreover, we do not agree with Holland's contention that the State misled him into believing that penetration would not be part of the proof. In addition to the State's criminal information expressly apprising Holland of the charge against him, Holland was made aware of the allegation of penetration because during his custodial interview he was squarely confronted with AG's allegation that the two had had sex that included nonconsensual penetration, which Holland denied.[6] Although Holland asserts that the State made misrepresentations about whether it would introduce proof of penetration, this claim is belied by the record. In the pretrial email exchanges between Holland's counsel and the

---

[6]In the custodial interview, Officer Hanna advised Holland that AG "[said] you guys had sex and she's saying that some of it was consensual. Oral sex . . . was consensual between you guys. But the actual penetration part wasn't." Holland then stated he did not remember having oral sex and that "[he] did not have sexual intercourse with her."

prosecutor, Holland's counsel generally asked whether there would be any evidence or testimony that had not been provided in discovery. The State responded that the general contents of the victim's allegations had been provided to the defense. It is important to observe that Holland's counsel never specifically inquired of the State whether AG would testify that Holland penetrated her vagina. Accordingly, the State never responded specifically to that inquiry. Under such circumstances, we cannot agree with Holland's contention that the State misled him into believing that penetration would not be part of the State's proof.

We further observe that there are other clear indications in the record that Holland was well aware of AG's allegation that there had been penetration. In Holland's motion in limine to limit discovery, Holland acknowledged that he had reviewed the State's case file and confirmed that he had been provided all the materials in the State's file. Part of those materials included crime-lab reports wherein AG was given a rape kit, and her vaginal swabs were tested for semen, P30, and Holland's DNA. If AG was not alleging penetration, there would have been no reason to perform the rape kit or conduct these tests. Holland, obviously aware that these tests were performed to try to confirm that penetration had occurred, commissioned his own serology and DNA expert, Mr. Schiro. Mr. Schiro testified that there was no semen or DNA of the appellant found in AG's vagina, presumably to refute the State's allegation that there had been penetration. Finally, in a pretrial motion in limine to exclude evidence of Holland's mental examination, Holland argued that evidence of his mental evaluation was irrelevant because "the only issue before the jury will

18

be whether Mr. Holland and AG engaged in consensual *sexual intercourse*." (Emphasis added.)

From a review of the criminal information, custodial interview, written reports, crime-lab evidence, and Holland's own acknowledgement, it is evident that Holland knew precisely what was at issue when he stood trial. We hold that Holland was provided sufficient notice of the criminal charge against him and that no due-process violation occurred.

We next turn to Holland's argument that AG's testimony about penetration was a discovery violation of the standards set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). The standard of review for imposing sanctions for a discovery violation is whether there has been an abuse of discretion. *Duck v. State*, 2018 Ark. 267, 555 S.W.3d 872.

In *Brady*, the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Joiner v. State*, 2019 Ark. 279, 585 S.W.3d 161.

Here, Holland contends that AG's statement at trial that Holland penetrated her was wholly inconsistent with the only two statements from her that had been disclosed to defense counsel before trial. Holland asserts that AG's allegation of penetration should have been disclosed by the State prior to trial because it was favorable to the defense for impeachment

19

purposes. Holland argues that his impeachment of AG during cross-examination was particularly important in this case because the case turned entirely on AG's credibility. In support of his argument, Holland cites *Giglio v. United States*, 405 U.S. 150 (1972), where the Supreme Court found a *Brady* violation based on the State's nondisclosure of a leniency agreement (impeachment material) between the prosecutor and the State's chief witness. Holland asserts that the State's failure to disclose impeachment evidence was a *Brady* violation requiring reversal of his conviction.[7]

The trial court herein ruled that there was no *Brady* violation under these circumstances, and we hold that there was no abuse of discretion in this regard. This is because the first prong of *Brady* has not been satisfied. AG's statement about penetration was not evidence favorable to the accused, as this statement was proof of one of the charged elements required to be proved by the State. The statement was not exculpatory; it was instead inculpatory. Although Holland contends that the statement about penetration is inconsistent with AG's prior statements as recorded in the written reports and that such inconsistencies can be used for impeachment purposes, the record shows that Holland fully cross-examined AG with these written reports in an attempt to discredit her trial testimony of penetration. AG's pretrial statements, which were provided to Holland in discovery, could be used for impeachment purposes, but AG's statement that there had been penetration was neither impeaching nor exculpatory. Therefore, the trial court did not err in denying Holland's *Brady* challenge.

---

[7]We observe that the remedy for a *Brady* violation is a new trial. *See Green v. State*, 2011 Ark. 92, 380 S.W.3d 380.

Holland's remaining arguments are that the trial court erred in denying his request for a mistrial and in denying his posttrial motion for a new trial. However, both of these claims are premised on Holland's claims of error asserted in his previous points on appeal. Having concluded that no error occurred during the trial, we accordingly conclude that no error occurred in the trial court's denial of Holland's motion for mistrial and motion for new trial.

Affirmed.

HARRISON and KLAPPENBACH, JJ., agree.

*Wilkinson Law Firm*, by: *Shane Wilkinson* and *Bryan Altman*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.